1    JAMES M. WAGSTAFFE (95535)
    **KERR & WAGSTAFFE LLP**
2    101 Mission Street, 18th Floor
    San Francisco, CA 94105–1727
3    Telephone: (415) 371-8500
    Fax: (415) 371-0500
4    Email: wagstaffe@kerrwagstaffe.com

5    Attorneys for Plaintiff
    UFCW LOCAL 1500 PENSION FUND
6
    [*additional counsel on signature page*]
7

8            **UNITED STATES DISTRICT COURT**

9           **NORTHERN DISTRICT OF CALIFORNIA**

10             **SAN JOSE DIVISION**

11

| | |
|---|---|
| UFCW LOCAL 1500 PENSION FUND, on behalf of itself and all others similarly situated, | Case No. |
|      Plaintiff | **VERIFIED COMPLAINT FOR:** |
| v. | **(1) DAMAGES FOR VIOLATION OF SECTIONS 7 & 8 OF THE INVESTMENT COMPANY ACT OF 1940 (15 U.S.C. §§ 80a-7 & 80a-8)** |
| MARISSA MAYER, DAVID FILO, SUE JAMES, THOMAS J. MCINERNEY, CHARLES R. SCHWAB, H. LEE SCOTT, JR., JANE E. SHAW, MAYNARD WEBB, JR., KENNETH A. GOLDMAN, RONALD S. BELL, HENRIQUE DE CASTRO, and MAX R. LEVCHIN, | **(2) RESCISSION FOR VIOLATION OF SECTIONS 7, 8, AND 47(b) OF THE INVESTMENT COMPANY ACT OF 1940 (15 U.S.C. §§ 80a-7, 80a-8, & 80a-46(b)** |
|      Defendants | **(3) BREACH OF FIDUCIARY DUTY** |
| and | **(4) UNJUST ENRICHMENT** |
| YAHOO! INC., | |
|      Nominal Defendant | **DEMAND FOR JURY TRIAL** |
| | CLASS AND DERIVATIVE ACTION |

Plaintiff, UFCW Local 1500 Pension Fund ("Local 1500" or "Plaintiff"), by its attorneys, alleges the following upon personal knowledge as to Plaintiff and its own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes review of publicly available information including, *inter alia*: (i) United States Securities and Exchange Commission ("SEC") regulatory filings of Yahoo! Inc. ("Yahoo" or the "Company"); (ii) the Company's public statements; and (iii) media and analysts' reports about Yahoo and the Individual Defendants (defined herein).

## SUMMARY OF COMPLAINT

1. Plaintiff brings this action under the Investment Company Act of 1940, as amended ("ICA") on behalf of itself and a Class (defined below) of all Yahoo stockholders similarly situated against the Company's Board of Directors (the "Board"), as well as Chief Financial Officer ("CFO") Kenneth A. Goldman ("Goldman"), former Chief Operating Officer ("COO") Henrique de Castro ("de Castro"), and former director Max R. Levchin ("Levchin") (collectively, the "Individual Defendants"), and also on behalf of and for the benefit of nominal defendant Yahoo against the Individual Defendants, for breaches of the ICA and their fiduciary duties in connection with Yahoo's continuous violations of federal statutes and regulations governing its business activities.

2. Yahoo describes itself as a global Internet new media company that offers a branded network of media, commerce, and communication services. However, as more fully described herein, Yahoo is primarily engaged in investing in publicly traded securities, with its combined ownership stake in two other companies, Yahoo! Japan Corporation ("Yahoo Japan") and Alibaba Group Holding Limited ("Alibaba"), representing approximately 90% of Yahoo's total assets.

3. As a company whose assets are and have been primarily invested in publicly traded securities, Yahoo is an investment company under the ICA. Yahoo has, however, failed to register as an investment company as required by the ICA, and is otherwise failing to comply with the structural limitations and the investor protection mandates of the ICA.

4.     The members of the Yahoo Board and certain executive officers have failed to cause Yahoo to register as an investment company and to comply with the ICA for the purpose of protecting their positions and the lucrative compensation packages associated with those positions.  In so doing, they have harmed Yahoo and its investors and exposed them to immense liability for failing to register under the ICA.

5.     Under the provisions of the ICA, an unregistered investment company may be prohibited from engaging in interstate commerce, and all contracts entered into by the unregistered investment company are unenforceable and may be voided by any party to the contract.  This includes employment contracts with officers and contracts with directors.

6.     This action seeks damages on behalf of Plaintiff and the Class resulting from the declining stock price caused by defendants' violations of the ICA.

7.     This action also seeks, derivatively, declaratory and injunctive relief to terminate and rescind employment/director compensation contracts, and any stock option agreements in connection with such employment/director contracts, with the current Board members and senior officers, as well as defendants de Castro and Levchin resulting from their violations of the law and breaches of the fiduciary duties of loyalty and due care.  Plaintiff also seeks, derivatively, disgorgement of all amounts paid pursuant to such contracts.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§80a-43 and 80a-46 and 28 U.S.C. §§1331 and 1337, because each claim involves issues arising under the ICA, and the rules and regulations thereunder.

9.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over the state law claims asserted herein.

10.     This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

11.     This Court has personal jurisdiction over each of the defendants because Yahoo's principal place of business is located within this District and all of the defendants have

1   conducted business in this District, including business relating to the claims being asserted

2   herein.

3          12.    Venue is proper in this district under 28 U.S.C. §1391 and 15 U.S.C. §80a-43

4   because Yahoo maintains corporate offices within the State of California, including this district,

5   and because many of the acts complained of herein occurred in this District.

6                          **INTRADISTRICT ASSIGNMENT**

7          13.    This action is properly assigned to the San Jose Division pursuant to Local Rule

8   3-2(c) & (e), because Yahoo's headquarters are located in Santa Clara County.

9                                  **PARTIES**

10         14.    Plaintiff is a citizen and resident of the State of New York.  Plaintiff is a current

11   Yahoo stockholder and was at all times relevant hereto a Yahoo stockholder.

12         15.    Nominal Defendant Yahoo is a Delaware corporation with its headquarters

13   located at 7010 First Avenue, Sunnyvale, California 94089.  Yahoo describes itself as focused on

14   informing, connecting, and entertaining its users by creating highly personalized experiences.

15   Yahoo also represents that it creates value for advertisers by connecting them with the audiences

16   that build their businesses.  Yahoo's common stock is traded on the Nasdaq under the symbol

17   "YHOO."

18         16.    Defendant Marissa Mayer ("Mayer") has served as Yahoo's CEO and President

19   since joining the Company in July 2012.  She has also served as a director of the Company since

20   July 2012.  Mayer's compensation since joining the Company has been as follows:

| Year | Salary | Bonus | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|-------|--------------|---------------|----------------------------------------|------------------------|-------|
| 2014 | $1,000,000 | $0 | $1,1752,355 | $28,194,288 | $1,108,800 | $28,065 | $42,083,508 |
| 2013 | $1,000,000 | $2,250 | $8,312,316 | $13,847,283 | $1,700,000 | $73,863 | $24,935,712 |
| 2012 | $454,862 | $0 | $35,000,002 | $0 | $1,120,000 | $40,540 | $36,615,404 |

25         17.    Defendant David Filo ("Filo") co-founded Yahoo in 1995.  Filo has served as an

26   officer of Yahoo since March 1995, and as a member of the Board since June 2014.  Filo also

27   served as a director from 1995 until February 1996.  According to the Company's website, Filo

28

1    is involved in guiding Yahoo's vision, is involved in many key aspects of the business at a

2    strategic and operational level, and is a stalwart of the Company's employee culture and morale.

3          18.    Defendant Sue James ("James") has served as a Board member since January

4    2010.  James is chair of the Audit and Finance Committee and is a member of the Nominating

5    and Corporate Governance Committee.  For the years 2013 and 2014, James' compensation was

6    $334,894 and $334,982, respectively.

7          19.    Defendant Thomas J. McInerney ("McInerney") has served as a Board member

8    since April 2012.  McInerney is a member of the Audit and Finance Committee.  For the years

9    2013 and 2014, McInerney's compensation was $309,978, and $309,982, respectively.

10         20.    Defendant Charles R. Schwab ("Schwab") has served as a Board member since

11   June 2014.  Schwab is a member of the Audit and Finance Committee.  Schwab's compensation

12   for 2014 was $257,951.

13         21.    Defendant H. Lee Scott, Jr. ("Scott") has served as a Board member since June

14   2014.  Scott is the chair of the Nominating and Corporate Governance Committee.  Scott's

15   compensation for 2014 was $260,057.

16         22.    Defendant Jane E. Shaw ("Shaw") has served as a Board member since June

17   2014.  Shaw is the chair of the Compensation and Leadership Development Committee.  Shaw's

18   compensation for 2014 was $262,442.

19         23.    Defendant Maynard Webb, Jr. ("Webb") was elected Chairman of the Board in

20   August 2013.  Webb has served as a Board member since February 2012, and served as interim

21   Chairman of the Board from April 2013 through August 2013.  Webb is a member of the

22   Compensation and Leadership Development Committee.  For the years 2013 and 2014, Webb's

23   compensation was $430,649 and $476,776, respectively.

24         24.    Defendant Goldman has served as the CFO of Yahoo since 2012.  In this role, he

25   is responsible for Yahoo's global finance functions including financial planning and analysis,

26   controllership, tax, treasury and investor relations.  For the years 2013 and 2014, Goldman's

27   compensation was $5,992,754 and $13,045,056, respectively.

28

25. Defendant Ronald S. Bell ("Bell") serves as General Counsel and Secretary of Yahoo. In this role, Bell oversees the Company's worldwide legal compliance and legal operations. Bell began as General Counsel in August 2012 and as Secretary in July 2012, and has been a Vice President of Yahoo since 2001. Bell also served as the interim General Counsel in July 2012; Deputy General Counsel, Americas Region from March 2010 to July 2012; Deputy General Counsel, North America Region from January 2008 to March 2010; Deputy General Counsel, Transactions and Business Counseling from June 2001 to January 2008; and in various other positions in the Yahoo legal department from July 1999 to June 2001. For the years 2013 and 2014, Bell's compensation was $4,951,001 and $4,186,656, respectively.

26. Defendant de Castro was the COO of Yahoo from October 2012 until his employment was terminated in January 2014. De Castro's compensation for only fifteen months of work totaled over $100 million, including almost $59 million in cash and stock as severance.

27. Defendant Levchin served as a member of the Board from December 2012 until he resigned on December 4, 2015. For the years 2013 and 2014, Levchin's compensation was $293,316 and $288,661, respectively.

28. Defendants Mayer, Filo, James, McInerney, Schwab, Scott, Shaw, Webb, Goldman, and Bell are collectively referred to herein as the "Current Directors and Officers."[1]

29. Defendants de Castro and Levchin are referred to herein as the "Former Directors and Officers."

30. Collectively, the Current Directors and Officers and the Former Directors and Officers are referred to herein as the "Individual Defendants."

## DEFENDANTS' OBLIGATIONS UNDER THE INVESTMENT COMPANY ACT OF 1940

31. Under the ICA, an investment company is any issuer of any security which:

> is *engaged* or proposes to engage *in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire*

---

[1] While the Current Directors and Officers were also heavily compensated for their service in 2015, these figures have not yet been released by the Company.

KERR
&
WAGSTAFFE
LLP

*investment securities having a value exceeding 40 per centum of the value of such issuer's total assets* (exclusive of Government securities and cash items) on an unconsolidated basis.

15 U.S.C. §80a-3(a)(1)(C) (emphasis added).

32.     Section 8 of the ICA mandates that any investment company organized or otherwise created under the laws of the United States or of any State must register with the SEC as such.  15 U.S.C. §80a-8.

33.     Under Section 7 of the ICA, an unregistered investment company is prohibited from engaging in interstate commerce, including, *inter alia*, selling or purchasing securities, controlling an investment company that sells or buys securities, engaging in any business in interstate commerce, or controlling any company that is engaged in any business in interstate commerce.  15 U.S.C. §80a-7.

34.     In addition, under Section 47(b) of the ICA, any contract, including employment contracts, entered into by an unregistered investment company is unenforceable and therefore voidable by any party to the contract.  15 U.S.C. §80a-46(b).

35.     As alleged below, since early 2013, Yahoo was engaged in the business of investing, owning, holding, or trading securities and owns securities with a value far exceeding the value of Yahoo's market capitalization and representing approximately 90% of Yahoo's assets.  As such, Yahoo was obligated to register as an investment company under the ICA, but has not done so.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

36.     By reason of their positions as officers, directors, and/or fiduciaries of Yahoo and because of their ability to control the business and corporate affairs of Yahoo, the Individual Defendants owe the Company and its stockholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Yahoo in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Yahoo and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit.  Each director

KERR
&
WAGSTAFFE
LLP

and officer of the Company owes to Yahoo and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

37.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Yahoo, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

38.     To discharge their duties, the officers and directors of Yahoo were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of Yahoo were required to, among other things:

A.     Ensure that the Company complied with its legal obligations and requirements, including its obligations to comply with the ICA (as further explained herein) and including acting only within the scope of its legal authority;

B.     Conduct the affairs of the Company in a lawful, efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

C.     Properly and accurately guide investors and analysts as to the financial condition of the Company at any given time;

D.     Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and take such actions as necessary to comply with federal and state securities laws, including, without limitation, the ICA; and

E.     Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations, including the ICA.

39.     Each Individual Defendant, as a director and/or officer, owed to the Company and to its stockholders the fiduciary duties of loyalty, good faith, and candor in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a

1    knowing and culpable violation of their obligations as directors and officers of the Company, the
2    absence of good faith on their part, and a reckless disregard for their duties to the Company and
3    its stockholders that the Individual Defendants were aware or should have been aware.

### CLASS ACTION ALLEGATIONS

4

5    40.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal
6    Rules of Civil Procedure.  The class consists of all persons who owned shares of Yahoo common
7    stock at any time since January 27, 2013 and who continued to own such shares through and
8    including January 6, 2016, and were damaged (the "Class").  Excluded from the Class are
9    Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated
10   with any Defendant.

11   41.    This action is properly maintainable as a class action.

12   42.    The Class is so numerous that joinder of all members is impracticable.  According
13   to the Company's public filings, as of October 30, 2015, there were over 944 million shares of
14   Yahoo common stock outstanding, held by thousands, if not tens of thousands, of individuals and
15   entities.

16   43.    There are questions of law and fact common to the Class, including, *inter alia*,
17   whether:  (i) Yahoo is an unregistered investment company; (ii) Yahoo was obligated to register
18   under the ICA; (iii) the Individual Defendants violated the ICA by failing to cause Yahoo to
19   comply with the ICA and by causing Yahoo to enter into contracts and transactions in violation
20   of the ICA; and (iv) Plaintiff and the Class have been damaged by Defendants' conduct.

21   44.    Plaintiff's claims are typical of the claims of the Class.  Plaintiff and the Class
22   have and will continue to sustain damages arising out of Defendants' violations of the ICA.
23   Plaintiff does not have any interests that are adverse or antagonistic to those of the Class.
24   Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to the
25   vigorous prosecution of this action and has retained counsel competent and experienced in this
26   type of litigation.

27   45.    The prosecution of separate actions by individual members of the Class would
28   create the risk of inconsistent or varying adjudications with respect to individual members of the

KERR
&
WAGSTAFFE
LLP

227541.1

8

VERIFIED CLASS ACTION & DERIVATIVE COMPLAINT

1   Class that would establish incompatible standards of conduct for the Individual Defendants, or

2   adjudications with respect to individual members of the Class that would as a practical matter be

3   dispositive of the interests of the other members not parties to the adjudications or substantially

4   impair or impede their ability to protect their interests.

5       46.     The Individual Defendants have acted, or refused to act, on grounds generally

6   applicable to, and causing injury to, Yahoo and the Class and, therefore, preliminary and final

7   injunctive relief is appropriate.

8                                    **FACTUAL ALLEGATIONS**

9   Background of the Company

10      47.     Yahoo was founded in 1995.   While Yahoo describes itself as an Internet

11  company providing search and display advertising services on Yahoo properties and affiliate

12  sites worldwide, the most significant and valuable aspects of its business are its publicly traded

13  investments.

14      48.     Yahoo represents that it offers many Internet related products including, for

15  example:  Yahoo Search, which serves as a starting point to navigate the Internet and discover

16  information; Yahoo Answers, which enables users to seek, discover, and share knowledge and

17  opinions across mobile phones, tablets, and desktops; Yahoo Mail that connects users to the

18  people and things; Yahoo Messenger, an instant messaging service; and Yahoo Groups, which

19  allows users to join groups based on shared interests and involvements.

20      49.     Despite such product lines, Yahoo's own financial statements, since 2013, show

21  that the overwhelming majority of its assets, revenues, and income are derived from its

22  investment business, not from its core business operations.   For example, income from

23  operations (net of tax, pro rata) for 2013 was only 32.7% of the total net income attributable to

24  Yahoo, while income from Yahoo's investments was 67.3% of the total net income attributable

25  to Yahoo.  For 2014, these percentages were a shocking 1.2% from operations income compared

26  to a staggering 98.8% for investment income.   Moreover, with respect to Yahoo's aggregate

27  income over the last two and three-quarters years (from 2013 through September 30, 2015),

28

income from operations as a percentage of net income attributable to Yahoo was only 4.2%, compared to 95.8% for income from investments.  *See* Income From Operations as a Percentage of Net Income Attributable to Yahoo and supporting documents, attached hereto as Exhibit 1.

Yahoo Invests in Yahoo Japan

50.     In April 1996, Yahoo signed a joint venture with SOFTBANK Corp. and its consolidated affiliates (collectively, "SOFTBANK"), which was amended in 1997, whereby Yahoo Japan was formed.  Yahoo Japan is a publicly traded company that is majority owned by SOFTBANK, and was formed to establish and manage a local version of Yahoo's properties in Japan.

51.     According to the Company's 2014 Annual Report, filed on Form 10-K with the SEC on February 26, 2015 (the "2014 Annual Report"), the fair value of the Company's ownership interest in the common stock of Yahoo Japan, based on the quoted stock price, was approximately $7 billion as of December 31, 2014.

52.     Yahoo currently holds approximately 2 billion shares of Yahoo Japan common stock valued at approximately $7.4 billion, representing approximately 35.5% of Yahoo Japan. Yahoo's stake in Yahoo Japan represents approximately 25% of Yahoo's current market capitalization and almost 20% of Yahoo's assets.

Yahoo Invests in Alibaba

53.     On October 23, 2005, Yahoo purchased approximately 46% of the outstanding common stock of Alibaba.com Corporation ("Alibaba Corp."), a large e-commerce company in China operating a leading online marketplace and online payment system.  At the time, this represented approximately 40% of Alibaba Corp. on a fully diluted basis, and was purchased for $1 billion in cash.

54.     After the deal with Alibaba was announced, Terry S. Semel ("Semel"), Yahoo Chairman and CEO at the time, spoke with *MarketWatch* about why Yahoo wanted to make an investment in Alibaba rather than just purchase it.  Semel stated:

> We structured it in a way that was consistent, in a funny way, [similar] to Japan.  [The structure allowed] Alibaba's overall management to run the

company, and it was a way for both sides to benefit going forward.  We're pleased that way.  We're thinking long-term thinking with a shared vision.  We spent a lot of time thinking about where we think the world is going.  Yahoo will continue to [focus] on commerce, search [where Yahoo is the No. 2 player in search -- based on number of queries -- behind Baidu, and you look at that and combine assets.  Our technology and their management is a winning combination.  We have a leg up on the fastest-growing market in the world and consistent with Asia.  This gives us an opportunity to lead in China.  We bet on the greatest growth of any company.

(Alterations in original.)

55.     Semel recognized that Yahoo's investment business was part of the Company's long-term business plan.  Indeed, Semel acknowledged that Yahoo had adopted a similar strategy for its investment in both Yahoo Japan and Alibaba.

56.     Yahoo's investment strategy has continued to pay off.  On September 18, 2012, Alibaba repurchased approximately 523 million of the 1 billion ordinary shares of Alibaba owned by the Company, for total consideration of approximately $7.1 billion.  The Company retained 383,565,416 ordinary shares of Alibaba, representing approximately 15% of Alibaba's outstanding ordinary shares.

57.     On September 24, 2014, Alibaba closed the initial public offering ("IPO") of its American Depositary Shares ("ADS"), with the Company receiving cash proceeds of $9.4 billion.  Alibaba trades on the New York Stock Exchange under the symbol "BABA."

58.     Yahoo currently holds approximately 384 million shares of Alibaba common stock valued at approximately $27 billion, representing approximately 16% of Alibaba.  Yahoo's stake in Alibaba. represents approximately 89% of Yahoo's current market capitalization and 70% of its assets.

59.     The combined value of Yahoo's financial stake in Yahoo Japan ($7.4 billion) and Alibaba ($27 billion) exceeds Yahoo's total market value by over $7 billion, and represents approximately 126% of Yahoo's current market capitalization and approximately 90% of Yahoo's current assets.

Yahoo's Aborted Alibaba Spin-Off

60.    Upon information and belief, prior to the class period, Yahoo recognized that it was operating as an investment company and might be in violation of the requirements of the ICA.  As explained below in ¶¶116-21, in 2000, Yahoo sought from the SEC a finding that the Company was exempt from the ICA even though it facially met the definition of an investment company under the ICA.

61.    On January 27, 2015, in an apparent effort to remedy this ICA violation, Yahoo filed a Current Report on Form 8-K with the SEC and issued a press release announcing its plan to spin-off of all of its remaining holdings in Alibaba. into a newly formed independent registered investment company (referred to as "SpinCo").  The stock of SpinCo would have been distributed pro rata to Yahoo's stockholders, resulting in SpinCo becoming a separate publicly traded registered investment company.  Following the completion of the transaction, SpinCo would have owned all of Yahoo's remaining 384 million Alibaba shares and Yahoo Small Business, a current operating business of Yahoo that would have also been transferred to SpinCo as part of the transaction.  The spin-off likely would have cured Yahoo's ICA problem and was structured to be tax-free.  As Yahoo CFO, Goldman, stated:

> We have actively engaged experts in tax efficient structures over the past two years and have considered a variety of alternatives.  We remain aligned with our shareholders and our plan is designed to achieve the most advantageous return of capital to Yahoo shareholders with the absolute highest probability of success . . . .  The structure provides the investment community with clear visibility into the respective entities' fundamentals, and also facilitates valuation transparency in SpinCo because Yahoo's stake in Alibaba will constitute almost all of its value.

62.    Also on January 27, 2015, the Company announced its fourth quarter and full year results for 2014 in a Current Report on Form 8-K filed with the SEC.  In the accompanying press release, Goldman again mentioned the proposed spin-off:  "Following the planned tax-free spin-off of the remaining stake in Alibaba, which we also announced today, we will have returned a total of nearly $50 billion in value to our shareholders to date."

63.    On the evening of January 27, 2015, the Company hosted an earnings call, and Mayer stated:

KERR
&
WAGSTAFFE
LLP

> For over two years we have worked with leading tax, accounting, legal and financial advisors to identify and design an optimal transaction that could maximize the value of our Alibaba stake in a tax efficient manner. Today I am happy and proud to announce that management has recommended and the Yahoo! Board has authorized a plan to pursue a tax free spin off of 100% of the company's remaining holdings in Alibaba. We expect to effectuate the spin off in Q4 of 2015.  This will result in two independent publicly traded companies.

64.     Over the next several months, Yahoo management went to great lengths to emphasize that management, including the Individual Defendants that were officers or directors of Yahoo at the time, was primarily focused on Yahoo's investment business and devoting a tremendous amount of time and energy to divesting its primary asset, Alibaba.

65.     In the Company's 2014 Annual Report, the Company again reported on its plan for a tax-free spin-off of Alibaba, noting that the "completion of the transaction is expected to occur in the fourth quarter of 2015 after the expiration of our one-year lock-up agreement relating to the Alibaba Group shares entered into in connection with the Alibaba Group IPO."

66.     On March 3, 2015, Yahoo management made a presentation at the Morgan Stanley Technology, Media & Telecom Conference.  When asked to elaborate on the potential risks to the tax free nature of the proposed Alibaba spin-off, Goldman stated:

> Yes, the potential risk on the tax free spin-off, there is always risk I mean clearly there is a 100% [precedent] for what we're doing.  I don't know of any new risk that we haven't laid out in the 10-K so it's pretty much all there in terms of what we have to go do we are focused and some would argue we may not need it but we're focused on getting a ruling from the IRS, and getting premiums [sic] from tax lawyers on this ensuring we get the appropriate filings and approval from the SEC.  Along the way I am not aware of any other risks to it, my -- again, I think as I have said constantly and I think maybe if you looked at the group of folks we have working with us I am pretty confident we are working with some of the if not the very best minds if you will, on this the fact that the people we work with have done spins over and over and over and over again, but until you do something it's never done, but I could certainly tell you *from the Company's point of view we're absolutely focused on this and we're not turning back*.

(Emphasis added.)

KERR
&
WAGSTAFFE
LLP

67.     On April 21, 2015, Yahoo filed a Current Report on Form 8-K with the SEC announcing its financial results or the first quarter of 2015.  On the earnings call later that evening, Goldman stated:

> First on the SpinCo update, we are pleased with the progress to date against our internal milestones and timelines for the proposed spin-off transaction for Alibaba shares.  We have submitted a request for a private letter ruling to the IRS.  We continue to work toward our previously announced Q4 target for completion of the transaction and a number of actions remain to be completed, including selecting a board and management team, determining capital structure, divesting Yahoo! small business, obtaining favorable tax opinions, filings with the SEC and satisfaction of other closing conditions.  *Our board and management team remain extremely focused on completing this transaction* and tax efficiently distributing potentially $32 billion of value to our shareholders, which is using Monday's closing Alibaba share place.

(Emphasis added.)

68.     This admission from Yahoo's CFO that the Board and management were "extremely focused" on the spin-off of the Company's interest in Alibaba once again confirmed that Yahoo's investment business was *the* major part of its overall business.

69.     In the Company's notice of its annual stockholders' meeting, filed on Schedule 14A with the SEC on April 29, 2015, the Company listed the planned "tax-efficient" spin-off of its remaining holdings in Alibaba as one of its "2014 Business Highlights."

70.     On May 7, 2015, Yahoo filed its quarterly report with the SEC on Form 10-Q, again stating that the "completion of the transaction is expected to occur in the fourth quarter of 2015 after the expiration of the Company's lockup agreement relating to the Alibaba Group shares entered into in connection with the Alibaba Group IPO."

71.     On May 19, 2015, Mayer presented at the JPMorgan Global Technology, Media & Telecom Conference.  When asked about when Yahoo would make progress updates with regard to the Alibaba spin-off, Mayer stated:

> The decision has been made [to proceed with the Alibaba spin-off], but there is a lot of work to do to make sure that, that entity is ready and to really make sure that we achieved the tax efficiency that we want.  So things are on track but there is a lot of people at Yahoo who are working very hard to make sure that we are able to set up the entity and get trading in Q4 that where we like [sic].

KERR
&
WAGSTAFFE
LLP

72.     Mayer's statement that "a lot of people at Yahoo" were working on the spin-off was an acknowledgement that Yahoo's investment business was a major component of its overall business at the time.

73.     On June 16, 2015, Mayer spoke at a Bloomberg Tech conference.  In response to reports that the IRS could change how it might tax spinoffs, Mayer stated:  "We're proceeding with our plan.  The changes don't apply to previous requests.  These proposed changes aren't changing the applicable law, but just changing the processes.  There are many of these transactions.  We feel like we should proceed with the transaction as we planned."

74.     On July 17, 2015, Yahoo filed a Current Report on Form 8-K with the SEC.  The accompanying press release announced the Company's initial SEC filing of a Registration Statement on Form N-2 under the ICA in connection with the Alibaba spin-off.  The name selected for the new company was also announced as Aabaco Holdings, Inc. ("Aabaco").  The press release again stated that the spin-off was expected to be completed in the fourth quarter of 2015.

75.     On July 21, 2015, Yahoo filed a Current Report on Form 8-K with the SEC announcing its financial results for the second quarter of 2015.  Later that evening on the earnings call, Goldman stated:

> First, the spin-off.  As many of you know, we filed a Registration Statement on Form N-2 with the SEC in connection with our plan to spin-off our remaining shares in Alibaba.  Together with Yahoo! Small Business into an independent publicly-traded investment company named Aabaco Holdings.  This filing is available on the SEC website using the name Aabaco Holdings.  The Registration Statement for the newly formed company provides information about Aabaco and the spin, including Aabaco's investment objective, capitalization, and risk factors and describes key agreements for the planned transaction.  While much work does lie ahead, this filing signifies a key milestone.  We believe there are strong and legitimate business purposes for the separation and remain committed to cooperating with relevant regulatory bodies to take the steps necessary to execute this spin-off in Q4.  We are pleased with progress to-date and are focused on completing this transaction and distributing significant value to our shareholders.

K E R R
—— & ——
W A G S T A F F E
LLP

76. On August 7, 2015, Yahoo filed its quarterly report with the SEC on Form 10-Q, again stating that the "completion of the transaction is expected to occur in the fourth quarter of 2015."

77. On September 2, 2015, Yahoo filed a Current Report on Form 8-K with the SEC. The filing stated, in pertinent part:

> On February 26, 2015, Yahoo submitted to the IRS a request for a private letter ruling with respect to whether Aabaco's ownership and operation of ASB would satisfy the active trade or business requirement (the "ATB Requirement") under Section 355 of the Internal Revenue Code of 1986, as amended (the "Code"). On May 19, 2015, the IRS announced that it was reconsidering its ruling policy with respect to the ATB Requirement. On July 31, 2015, the IRS formally announced that it was studying potential new administrative guidance with respect to certain issues under Section 355 of the Code, including the ATB Requirement. On September 2, 2015, the IRS notified Yahoo's counsel that it had determined, in the exercise of its discretion, not to grant the requested ruling. At the same time, the IRS indicated that it had not concluded that the proposed spin-off transaction was taxable and therefore was not ruling adversely on the request. Following receipt of such notification, Yahoo withdrew its request for a ruling on September 2, 2015.
>
> Subsequent to the IRS's decision with respect to its ruling request, Yahoo confirmed with its tax counsel, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), that the discretionary decision by the IRS not to grant Yahoo's ruling request with respect to the ATB Requirement did not reflect any change in U.S. tax law with respect to the tax-free treatment of the proposed spin-off and would not affect Skadden's ability to render an opinion that, under current law and subject to certain factual representations and assumptions, the currently proposed spin-off will satisfy all of the requirements for tax-free treatment under the Code, including the ATB Requirement.
> Work proceeds on the pending Aabaco spin-off plan. Yahoo's Board of Directors will continue to carefully consider the Company's options, including proceeding with the spin-off transaction on the basis of an opinion of counsel.

78. On September 28, 2015, Yahoo filed a Current Report on Form 8-K with the SEC stating, in pertinent part:

> On September 14, 2015, the IRS issued a formal "no-rule" policy with respect to certain transactions similar to the Aabaco spin-off and, in a notice released on the same day, indicated that the IRS and U.S. Department of the Treasury are studying the possibility of promulgating

new guidance with respect to such transactions in the future.  Neither this ongoing guidance project nor the IRS's decision not to rule with respect to the Aabaco spin-off transaction changes the current law applicable to the proposed spin-off.  In addition, on September 19, 2015, an IRS official indicated in a public statement that any future guidance issued as part of the project would not apply retroactively to transactions completed prior to the issuance of such guidance.

On September 23, 2015, Yahoo's Board of Directors authorized the Company to continue to pursue the plan for the Aabaco spin-off transaction as previously disclosed, except that completion of the spin-off will not be conditioned upon receipt of a favorable ruling from the IRS.  The spin-off transaction will continue to be subject to certain other conditions, including final approval by Yahoo's Board of Directors, receipt of a legal opinion with respect to the tax-free treatment of the transaction under U.S. federal tax laws and regulations, the effectiveness of an applicable registration statement filed with the [SEC] and compliance with the requirements under the [ICA], and other customary conditions, each of which conditions may be waived, in whole or in part (to the extent permitted by law), by Yahoo in its sole discretion.

On September 28, 2015, Aabaco filed Amendment No. 1 to its Registration Statement on Form N-2 which is available on the SEC's website at www.sec.gov using the name Aabaco Holdings, Inc.

79.     On October 20, 2015, Yahoo filed a Current Report on Form 8-K with the SEC announcing the Company's financial results for the third quarter of 2015.  In the press release, Mayer stated:  "In addition to sharpening focus within core business growth, our top priority is the planned spinoff of Aabaco Holdings.  This is an important moment for the Company, and we continue to strive to complete the spin as quickly as we can."  Once again, Mayer's statement evinced a recognition that managing Yahoo's investments was the "top priority" and major focus of its business.

80.     On the earnings call later that evening on October 20, 2015, Mayer spoke about the Alibaba spin-off:

We continue to make good progress and strive to complete the spin in Q4. We do want to note that due to the time needed to satisfy certain conditions, including completing the required SEC process, the final approval of both the Yahoo! and Aabaco boards, compliance with the notice requirements under the convertible note indenture, and taking into consideration holiday market closures at the end of the quarter, the transaction may ultimately conclude in January.

Goldman continued:

> Before diving further into the financial details for the quarter, let me make a couple comments on the Aabaco spinoff transaction. After carefully considering the company's options and feedback we received from our shareholders, our board authorized the company to continue to pursue the planned spinoff without a private letter ruling on the basis of a receipt of a favorable tax opinion from counsel. . . . We remain focused on executing the transaction as soon as possible and look forward to updating you with a complete spinoff as well as our go-forward plan for core Yahoo! on our Q4 earnings call.

81.    When asked how to make investors comfortable with the fact that the IRS would not come back and challenge the deal, Goldman responded:

> We have made a tremendous amount of progress. There is a lot of work that has been done and accomplished here. Believe it or not, we can see the goal line. So we are very confident relative to that. We have a few things to do as we enumerated. We're following through on all of those. We tend not to want to speak for the IRS, so we're not going to do that. But we work very closely with our tax and legal advisors and so that's allowed us to make the statements that we have made. But I can assure you *we have all hands on deck, whether it's the management team, the board, and so forth to achieve this and to achieve a positive outcome in the timeframe that we established for this spinoff.*

(Emphasis added).

82.    On November 5, 2015, Yahoo filed its quarterly report with the SEC on Form 10-Q, in which it now stated that the "completion of the [Alibaba spin-off] is expected to occur prior to the end of January 2016."

83.    On November 16, 2015, the Company, on behalf of Aabaco, filed with the SEC a General Form for Registration of Securities on Form 10, as well as a second amendment to its Form N-2.

84.    On November 19, 2015, Jeffrey C. Smith ("Smith"), chief executive of Starboard Value ("Starboard"), a significant activist hedge fund investor in Yahoo, sent a letter to Mayer and Webb expressing Starboard's frustration with the current Board and urging Yahoo to abandon its plan to move forward with the Alibaba spin-off. The letter stated, in pertinent part:

1
2
3
4
5
6
7
8
9
10
11

We have grown increasingly frustrated with your unwillingness to accept our help and your dismissive approach to our serious concerns about the current situation at Yahoo! Inc. ("Yahoo").  As you, the management team, and your advisors requested from us over a year ago, we have attempted to work with you privately and agreed not to pursue the nomination and election of directors at last year's annual meeting.  Despite our numerous conversations and meetings, and notwithstanding your willingness to provide us an audience, you have been reluctant to respond or adapt to the realities of the current environment.  The current situation that Yahoo faces is so important that we now feel it is necessary to communicate with management and the Board of Directors ("Board") in a manner such that our message is not only as explicit as possible for you, but also for our fellow Yahoo shareholders.  **The proposed spin-off of Aabaco Holdings, Inc. ("Aabaco Holdings") is not Yahoo's best alternative.  Instead, you should be exploring a sale of Yahoo's core Search and Display advertising businesses ("Core Business") and leave Yahoo's ownership stakes in Alibaba Group and Yahoo Japan in the existing corporate entity.**

12

\*          \*          \*

13
14
15
16
17

For over a year now, we have attempted to work privately and constructively with you, management, and the Board.  Unfortunately, time is now of the essence and the momentum around the proposed Aabaco Holdings spin-off is pulling our investment down the wrong path.  I have now offered four different times over the last four months to join the Board to help you analyze this situation given my successful board experience, our perspective as an owner, and my particular knowledge of this situation.  Unfortunately, you have repeatedly refused our respectful requests.

18
19
20
21
22
23

We believe you must make the right choice for Yahoo and its shareholders.  What was once complicated and opaque, has now crystallized when analyzed through the lens of reward compared to possible risk.  Over the last several months, we have come to realize the situation at Yahoo is one with potential asymmetric outcomes, and therefore, we believe selling the Core Business now is the best outcome for Yahoo shareholders.  We urge you to change direction and do the right thing for shareholders.  As we have expressed to you, we expect the shareholders' interest to remain of paramount importance and will look to make significant changes to the Board if you continue to make decisions that destroy shareholder value.

24

(Emphasis in original).

25
26
27
28

85.     Then, after the market closed on December 9, 2015, after almost a year of full-time management attention and after tens of millions of dollars invested into the spin-off plan, *and just days after* Mayer and Yahoo had announced the proposed timing for the Alibaba spin-



off, the Company shocked the market and issued a press release announcing that the Board had decided to suspend work on the pending plan to spin off Alibaba.  The press release stated, in pertinent part:

> SUNNYVALE, Calif. – December 9, 2015 – Yahoo! Inc. (NASDAQ: YHOO) today announced that its Board of Directors, after careful review and consideration of how to best drive long-term value for shareholders, has unanimously decided to suspend work on the pending plan, announced in January of 2015, to spin off the company's remaining holdings in Alibaba Group Holding Limited (NYSE: BABA).  The Board will now evaluate alternative transaction structures to separate the Alibaba stake, focusing specifically on a reverse of the previously announced spin transaction.

> In the reverse spin off, Yahoo's assets and liabilities other than the Alibaba stake would be transferred to a newly formed company, the stock of which would be distributed pro rata to Yahoo shareholders resulting in two separate publicly-traded companies.

> "We believe that the previously announced spin off would be tax free to Yahoo and its shareholders," said Maynard Webb, Chairman of Yahoo's Board of Directors.  "However, in consideration of developments since the original spin off plan was announced and after significant deliberations, we are suspending work on the Aabaco spin off.  Among other factors, we were concerned about the market's perception of tax risk, which would have impaired the value of Aabaco stock until resolved.  Informed by our intimate familiarity with Yahoo's unique circumstances, the Board remains committed to accomplishing the significant business purposes and shareholder benefits that can be realized by separating the Alibaba stake from the rest of Yahoo.  To achieve this, we will now focus our efforts on the reverse spin off plan."

> "In addition to our efforts to increase value and diminish uncertainty for investors, the ultimate separation of our Alibaba stake will be important to our continued business transformation," said Marissa Mayer, CEO of Yahoo.  "In 2016, we will tighten our focus and prioritize investments to drive profitability and long-term growth.  A separation from our Alibaba stake, via the reverse spin, will provide more transparency into the value of Yahoo's business."

> The reverse spin off is expected to require, among other things, third party consents, preparation of audited financial statements, shareholder approval, and SEC filings and clearance, including under the Investment Company Act of 1940.  While the company intends to move expeditiously to complete the transaction, it is advised that complex transactions of this kind can take a year or more to conclude.

86.     On December 8, 2015, the day before Yahoo shocked the market by announcing it had abandoned its year-long plan to spin off Alibaba and was considering an alternative plan focusing on a reverse spin off, Yahoo common stock closed at $34.85.

87.     On December 9, 2015, the day Yahoo announced it had abandoned its year-long plan to spin off Alibaba and was considering a reverse spin-off, Yahoo common stock traded as low as $33.15 on high volume.

88.     And just two days later, on December 11, 2015, just two days after Yahoo shocked the market by announcing it had abandoned its year-long plan to spin off Alibaba, the price of Yahoo common had dropped further by almost $2.00, or 6.5%, from its December 8, 2015 closing price to close at $32.91.

89.     With the letter from Starboard the only intervening event between when the Company made public SEC filings announcing the final timing of the proposed spin-off and when it announced it had abandoned the plan, it is difficult to imagine any reason the Board changed course so abruptly other than to appease Smith in the hopes of avoiding a proxy fight and retaining their positions as directors.[2]

90.     Then, on January 6, 2016, Starboard sent another letter to the Board expressing its dissatisfaction with the Board and current management and its frustration with the Company's apparent unwillingness to move quickly in pursuit of a sale or spin-off of Yahoo's core business. This letter was widely disseminated through a Starboard press release, and Bloomberg ran an article on the letter the same day titled "Yahoo Urged by Starboard to Overhaul Management, Board."

91.     Yahoo responded to Starboard's letter the same day with the following broadcast reported through CNBC via Twitter:

> Yahoo is in the midst of a multiyear transformation.  We attract more than
> a billion people every month and we've built a profitable, billion dollar

---

[2]  Just one month earlier, Starboard had prevailed in its showdown with the board of directors of Darden Restaurants ("Darden"), the owner of Olive Garden and other restaurant chains, winning stockholder support to replace the entire Darden board, including a seat for Smith.

KERR
&
WAGSTAFFE
LLP

business in mobile, video, native and social that we expect will drive sustainable growth.  We will share additional plans for a more focused Yahoo on or before our Q4 earnings call.  Our board and management team engage in and maintain regular, open dialogue with all our shareholders, and consistently strive to deliver and to maximize shareholder value.

92.     Also on January 6, 2016, Fortune published an article titled "Yahoo's Response To Activist Shareholder:  A New Plan Is Coming."  *See* Exhibit 2.  The article quoted the above Yahoo reaction to Starboard's letter, noting that:  "In November, Starboard Value pressed Yahoo to reverse its plan to spin off its large stake in Alibaba . . . , which is worth more than $30 billion. Eventually, Yahoo agreed and said it would instead spin off or sell its operating business."  The article noted that in response to Starboard's most recent letter:  "Yahoo . . . quickly responded Wednesday afternoon [January 6, 2016], . . . by saying that the company [is] in a 'multiyear transition' and is preparing to be 'more focused.'"

93.     With Yahoo's announcement of a multiyear transaction, the Company effectively announced that it would not be taking any measures, whether spinning off its stake in or spinning off or selling its operating business, to remedy its status as an unregistered investment company.

94.     The market reacted to such news.  On January 6, 2016, Yahoo common stock had closed at $32.16.  On January 7, 2016, the day after the Starboard letter and Yahoo's reaction were made public and it was clear that Yahoo had no plan to remedy its unregistered status, the value of Yahoo common stock dropped $2.00, to close at $30.16.

95.     The value of Yahoo common stock has continued to decline since both the December 9, 2015 announcement that the Alibaba spin-off would not move forward and Starboard's January 6, 2016 letter, and the stock has failed to trade at or above its $34.85 closing price on December 8, 2015.

96.     As noted above, had the spin-off been completed as planned, Aabaco would have been classified as a registered investment company under the ICA, and Yahoo would likely have resolved its ICA problem.

Yahoo's Management and Board of Directors Are Conflicted

97.     Each of the named Individual Defendants, current and former management and directors of Yahoo, who failed to undertake the necessary steps to spin-off or otherwise reduce or liquidate the Company's publicly traded investment interests or to register under the ICA during their tenure, have put their interests above those of the Company and its stockholders.  It is apparent that these Individual Defendants, including the CEO and current Board, have improperly failed to act solely to protect their positions at Yahoo and the lucrative compensation perks they obtain from Yahoo.

Yahoo is an Unregistered Investment Company

98.     Yahoo's current market capitalization is approximately $28.5 billion.  However, as several analyst and media reports argue, Yahoo's core Internet business actually appears to be worthless, or less than worthless.  For example, a December 3, 2015 article in USA Today titled "Yahoo is worthless.  Here's the math" explained that after subtracting the value of Yahoo's holdings in Alibaba and Yahoo Japan from its market value, you are left with a negative value of Yahoo of approximately $7.3 billion.  As the article explained, the value was actually closer to negative $12 to 13 billion.  The article provides the following table to demonstrate, using the market value of the Company's assets at the time the article was published:

| Line item:  $ billions |
|---|
| Yahoo market value:  $33.7 |
| less Alibaba:  $32.2 |
| less Yahoo Japan:  $8.8 |
| less cash:  $5.9 |
| plus long-term debt:  $1.2 |
| Value of Yahoo's core business: ($12) |

*See* Exhibit 3.

99.     As noted above, the value of Yahoo's investments in Yahoo Japan and Alibaba represent, and have for some time represented, more than 90% of Yahoo's assets.

100.    Under the ICA, an investment company is any issuer of any security which:  "is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or

trading in securities, and owns . . . investment securities having a value *exceeding 40 per centum* of the value of such issuer's total assets." 15 U.S.C. §80a-3(a)(1)(C) (emphasis added).

101.    Since Yahoo owned and held investment securities, namely the stock of Yahoo Japan and Alibaba, having a value far exceeding 40% of Yahoo's total assets, it was and is obligated to register as an investment company with the SEC under Section 8 of the ICA.

102.    Yahoo has not registered with the SEC as an investment company and is therefore illegally operating as an unregistered investment company.

103.    Under Section 7 of the ICA, an unregistered investment company is prohibited from engaging in interstate commerce, including, *inter alia*, selling or purchasing securities, controlling an investment company that sells or buys securities, engaging in any business in interstate commerce, or controlling any company that is engaged in any business in interstate commerce. 15 U.S.C. §80a-7.

104.    In addition, under Section 47(b) of the ICA, any contract entered into by an unregistered investment company, including employment contracts, is unenforceable and therefore voidable by any party to the contract. 15 U.S.C. §80a-46(b). Accordingly, Yahoo should be compelled to promptly void unlawful contractual commitments, namely its employment contracts with the Board members and current and former officers that have breached their fiduciary duties to Yahoo and its stockholders by causing Yahoo to illegally operate as an unregistered investment company and exposing shareholders to potential catastrophic liability.

Yahoo is Not Entitled to Exemption Under Section 3(b)(1)

105.    Under Section 3(b)(1) of the ICA, any issuer who otherwise fits the definition of an investment company under the Act may be exempt if that issuer is "primarily engaged, directly or through a wholly-owned subsidiary or subsidiaries, in a business or businesses other than that of investing, reinvesting, owning, holding, or trading in securities." 15 U.S.C. § 80a-3(b)(1).

106.    Under Section 3(b)(2) of the ICA, an issuer who otherwise fits the definition of an investment company may also be exempt if it applies for and receives an order from the SEC

KERR
&
WAGSTAFFE
LLP

declaring it to be "primarily engaged in a business or businesses other than that of investing, reinvesting, owning, holding, or trading in securities either directly or (A) through majority-owned subsidiaries or (B) through controlled companies conducting similar types of businesses." 15 U.S.C. § 80a-3(b)(2).  As described below, Yahoo made such an application to the SEC in 2000, 16 years ago, in connection with its investment in Yahoo Japan, but prior to its investment in Alibaba.

107.    In determining whether a company is primarily engaged in a non-investment company business under Section 3(b)(2), the SEC and courts consider:   (a) the company's historical development; (b) its public representations of policy; (c) the activities of its officers and directors; and most important, (d) the nature of its present assets; and (e) the sources of its present income.[3]

108.    As described below, the application of these factors demonstrates clearly that Yahoo is not exempt from the ICA.

109.    Yahoo was founded in 1995, and just one year later acquired its stake in Yahoo Japan.  By at least 1999, Yahoo's ownership interest in Yahoo Japan had grown so large that it exceeded 40% of the total value of Yahoo's assets.  Recognizing the risks Yahoo faced in operating as an unregistered investment company, namely being prohibited from engaging in interstate commerce and rendering all of its contracts voidable and unenforceable, the Company applied to the SEC for an exemption from the ICA in 2000.  *See* Exhibit 4.  This application publicly conceded that Yahoo was operating as an investment company as far back as 16 years ago, and Yahoo's mix of assets has only become more investment heavy.  In fact, the investment securities Yahoo currently holds represent a far greater percentage (more than double) of Yahoo's total assets than they did in 2000.

---

[3] *See In the Matter of Tonopah Mining Co. of Nevada*, Investment Company Act Release No. 1084, 26 S.E.C. 426 (July 21, 1947).

K E R R
———— & ————
W A G S T A F F E
LLP

110. As a March 29, 2000 New York Post article titled "Yahoo! Tells SEC: We've Got Nothing In Mutual," put it, "There may be a new Web business model: search engine to mutual fund in just six years." *See* Exhibit 5.

111. Although Yahoo claims that it is an Internet/technology company, analysts in the stock market have a very different perception, and value Yahoo's Internet business as less than worthless. As noted above, Yahoo's market value is approximately $28.5 billion, with its stakes in Alibaba and Yahoo Japan worth a combined $34.4 billion, which leaves Yahoo's core Internet business worth less than zero.

112. Several analysts have also pointed out that Yahoo is merely a "proxy" for Alibaba. A September 12, 2014 article titled "Buying Yahoo to play Alibaba? History hints at future moves," explained: "Some people will buy a house if that's the only way to get at an oil well underneath it. The same logic can drive pay-dirt-hunting investors to buy into a company they're indifferent to, purely as a way to play another business it owns." In explaining that investors were purchasing Yahoo stock to get at Alibaba, the article went on to note that "there have been several instances over the past decade and a half in which one company's stock became a virtual, temporary proxy for a hotly sought subsidiary or its stake in a third-party company." *See* Exhibit 6.

113. Similarly, a September 15, 2014 article on *MicroFundy* titled "Yahoo's time as an Alibaba proxy is running out," which was written in advance of Alibaba's IPO, explains:

> It's pretty obvious that Yahoo has been trading like an Alibaba proxy over these last couple of years. It has been the case ever since they sold their first stake in Alibaba back in 2012. If most of the investors in Yahoo only invested into it because they wanted exposure to Alibaba, which based on recent reports there seems to be plenty of investors desperate for some exposure, why would they own it come this time next week?

*See* Exhibit 7.

114. A September 16, 2014 *Forbes* article titled "Selling Yahoo For Alibaba? Not So Fast" argued that Yahoo was and would continue to be a proxy for Alibaba:

> So you have in Yahoo's stock a collection of assets where the Alibaba stake would be worth $45 billion in a year from now and everything else

KERR
&
WAGSTAFFE
LLP

would be worth $26 billion.  Combined that's $71 billion in assets potentially — or about $71/share.

So is Yahoo's stock going to stop being a proxy for Alibaba post-IPO?  I don't see it when two-thirds of the potential value of the assets within Yahoo will be related to Alibaba.

*See* Exhibit 8.

115.    Since at least August 3, 2015, Jim Cramer ("Cramer"), former hedge fund manager, best-selling author, host of CNBC's *Mad Money*, and a co-founder of *TheStreet, Inc.*, has been telling the market to buy Yahoo to get to Alibaba:  "I've always been saying the whole time that you should own Yahoo! as a play on Alibaba . . . ."  *See* Exhibit 9.  On October 27, 2015, Cramer reiterated his view that the way to play Alibaba is still to buy Yahoo.

116.    Finally, as demonstrated in the table below and the documents attached hereto as Exhibit 1, since at least 2013, the vast majority of Yahoo's income has been derived from its various investments and not from operations.  As noted above, income from operations (net of tax, pro rata) for 2013 was only 32.7% of the total net income attributable to Yahoo, while income from Yahoo's investments was 67.3% of the total net income attributable to Yahoo.  For 2014, these percentages were only a shocking 1.2% from operations income compared to a staggering 98.8% for investment income.  Moreover, with respect to Yahoo's aggregate income over the last two and three-quarters years (from 2013 through September 30, 2015), income from operations as a percentage of net income attributable to Yahoo was only 4.2%, compared to 95.8% for income from investments.  In other words, in 2013, Yahoo's net of tax, pro rata share of income from its investments was (in thousands) $919,245 compared to operations income of $447,036, and in 2014 investment income was $7,433,697 compared to operations income of only $88,034.  Moreover, for Yahoo's aggregated income over the last two and three-quarters years, from 2013 through September 30, 2015, Yahoo's net of tax, pro rata share of income from its investments was (in thousands) $8,589,392 compared to operations income of only $374,525.

VERIFIED CLASS ACTION & DERIVATIVE COMPLAINT

KERR
&
WAGSTAFFE
LLP

| (in thousands) | 2013 | 2014 | 9/30/2015 | 2013 to (9/30/15) |
|---|---|---|---|---|
| Income from operations (net of tax, pro rata) | $ 447,036 | $ 88,034 | $ (160,545) | $ 374,525 |
| **Income from Operations as % of net income attributable to Yahoo! Inc.** | **32.7%** | **1.2%** | **N/A** | **4.2%** |
| Total Investment Income | 919,245 | 7,433,697 | 236,450 | $ 8,859,932 |
| **Income from Investments as % of net income attributable to Yahoo! Inc**. | **67.3%** | **98.8%** | **311.5%** | **95.8%** |
| Net income attributable to Yahoo! Inc. | 1,366,281 | 7,521,731 | 75,905 | $ 8,963,917 |
| | 100.0% | 100.0% | 100.0% | 100.0% |

117.     Moreover, as Yahoo stated numerous times in its public filings and on investor calls, for at least the last year, the Alibaba spin-off has been the primary focus of Yahoo's business and of its management team.

118.     In sum, under the applicable test, Yahoo is not entitled to an exemption under the ICA because:  (1) with the value of Yahoo's investments worth nearly 90% of its total assets, the percentage of Yahoo's assets that are investments thus greatly exceeds the 40% threshold established by the ICA; (2) for at least the years from 2013 through 2015 (as reported), Yahoo's income from its investments has been greatly in excess of its income from operations; (3) the market perceives Yahoo as merely a proxy or holding company for Alibaba; and (4) for at least the last year, Yahoo management has been focused on the Alibaba spin-off, and has spent the majority of its time managing that investment.

Yahoo's Previous ICA Exemption Application for Yahoo Japan

119.     As noted above, this is not the first time in Yahoo's history the Company has exceeded the 40% threshold set by the ICA.

120.     In 2000, the value of Yahoo's single holding in Yahoo Japan had soared. According to a March 29, 2000 *NY Times* Article titled "Yahoo Seeking to Avoid Mutual Fund Status," Yahoo's 34% stake in Yahoo Japan had grown to 75% of Yahoo's total assets by the end of the third quarter of 1999.  *See* Exhibit 10.

121.     Realizing that the Company risked running afoul of the ICA, on February 11, 2000, Yahoo filed an application with the SEC requesting an exemption order under Section 3(b)(2) of the ICA declaring that the Company was primarily engaged in a business other than

KERR
&
WAGSTAFFE
LLP

that of investing, reinvesting, owning, holding, or trading in securities, and therefore not an investment company as defined in the ICA.

122.   In its May 18, 2000 amendment to its application, Yahoo stated that it currently owned 34% of the outstanding voting securities of Yahoo Japan, with the fair market value of $8.4 billion.

123.   According to a March 29, 2000 *Wall Street Journal* article titled "Yahoo! Asks SEC For Exemption From Mutual Fund Regulations," Yahoo had applied for an exemption from the SEC once before, but withdrew its application in 1998 when it became clear that the SEC would deny it. *See* Exhibit 11.

124.   In 2000 when Yahoo's stake in Yahoo Japan accounted for over 75% of the value of Yahoo's total assets, the Company sought an order from the SEC exempting it from registering as an investment company under the ICA.  As noted above, the circumstances are far worse now, with Yahoo's stakes in Yahoo Japan and Alibaba accounting for 90% of Yahoo's total assets.  And with most of Yahoo's income from investments **not** operations, Defendants' failure to even attempt to seek such an exemption is an acknowledgement that its situation has changed:  its investment assets are now so great and its core business income so small that Yahoo recognizes it would not be able to obtain an exemption as it did fifteen years ago.  This is a tacit acknowledgment that Yahoo is an unregistered ICA.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

125.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

126.   Plaintiff brings this action derivatively in the right and for the benefit of Yahoo pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, to redress injuries suffered and to be suffered by the Company as a direct result of the Individual Defendants' violations of their fiduciary obligations.  Yahoo is named solely as a Nominal Defendant.

127.   This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.   Plaintiff is an owner of Yahoo common stock and was an owner of Yahoo

1   common stock at all times relevant hereto.  Plaintiff will adequately and fairly represent the

2   interests of Yahoo and its stockholders in enforcing and prosecuting their rights.

3       128.    The Board, or at the very least, a majority of it, cannot exercise

4   independent objective judgment about whether to bring and/or vigorously prosecute this

5   action. For the following reasons, and for reasons detailed elsewhere herein, Plaintiff has not

6   made, and should be excused from making, a pre-suit demand on the Board to initiate this

7   action, because making such a demand would be a futile and useless act.

8       129.    The acts complained of herein constitute violations of the fiduciary duties of

9   good faith, loyalty, and candor owed by the Board and certain officers to the Company and its

10  stockholders.

11      130.    At the time this action was commenced, Yahoo's Board consisted of eight (8)

12  directors:  Defendants Mayer, Filo, James, McInerney, Schwab, Scott, Shaw, and Webb.  These

13  directors are incapable of independently and disinterestedly considering a demand to commence

14  and vigorously prosecute the action for the following reasons:

15          (a)     This action seeks to void the employment contracts of each of these

16                  Defendants and seeks payments previously made under these agreements

17                  amounting to thousands of millions of dollars.  Given this, such Defendants

18                  are incapable of disinterested consideration of a demand to prosecute this

19                  lawsuit;

20          (b)     The Board members breached their fiduciary duty of loyalty by failing to

21                  register Yahoo as an investment company, when the Board members were

22                  aware, or recklessly disregarded that Yahoo meets the definition of an

23                  investment company under the ICA; and

24          (c)     The Board members breached their fiduciary duty of loyalty when they

25                  abandoned the Company's plan to spin-off Alibaba, which likely would

26                  have resolved the ICA issue, to ensure that they retained their positions.[4]

27  ────────────────────

28      [4]  In a gross breach of fiduciary duty, rather than moving forward with the Alibaba spin-
        off, which would have divested Yahoo of its problematic $27 billion stake in Alibaba and

KERR
—— & ——
WAGSTAFFE
LLP

## COUNT I

### Violation of Section 7 and 8 of the ICA
### Against the Current Directors and Officers and Seeking Damages
### (Asserted on Behalf of Plaintiff and the Class)

131.    Plaintiff repeats and realleges the allegations in the paragraphs above, as if fully set forth herein.

132.    Section 8 of the ICA mandates that any investment company organized or otherwise created under the laws of the United States or of any State must register with the SEC as such.

133.    Section 7 of the ICA prohibits an unregistered investment company from engaging in interstate commerce and creates a private right of action.

134.    Yahoo is an investment company that has failed to register as required by Section 8 of the ICA, and has not otherwise complied with the investor protection mandates of the ICA.

135.    Plaintiff asserts on behalf of the Class that the Individual Defendants have caused Yahoo to operate as an unregistered investment company in violation of the ICA for their own benefit and to the detriment of the Company and its stockholders, and that Plaintiff and the Class have been damaged thereby.

136.    Had the Individual Defendants proceeded with their plan to spin off Alibaba, Yahoo likely would have ceased to be operating as an unregistered investment company.

137.    The Company's stockholders suffered damages when the Individual Defendants abandoned their plan to spin off Alibaba, and the price of Yahoo common stock declined as a result.

reduced the value of Yahoo's investments to less than 40% of the value of its total assets, the Board abandoned the plan to ensure activist investor Starboard would not initiate a proxy contest to unseat the Board.



## COUNT II

### Violation of Sections 7, 8, and 47(b) of the ICA
### Against the Current Directors and Officers Seeking Rescission of Contracts
### (Asserted on Behalf of and for the Benefit of Yahoo)

138.    Plaintiff repeats and realleges the allegations in the paragraphs above, as if fully set forth herein.

139.    Section 8 of the ICA mandates that any investment company organized or otherwise created under the laws of the United States or of any State must register with the SEC as such.

140.    Section 7 of the ICA prohibits an unregistered investment company from engaging in interstate commerce and creates a private right of action.

141.    Section 47(b) of the ICA provides that a contract made in violation of the ICA, or whose performance involves (or will involve in the future) a violation of the ICA, or any rule or regulation thereunder, is unenforceable by either party, and provides for whole or partial rescission and restitution.

142.    Yahoo is an investment company that has failed to register as required by Section 8 of the ICA, and has not otherwise complied with the investor protection mandates of the ICA.

143.    The Individual Defendants have caused Yahoo to operate as an unregistered investment company in violation of the ICA for their own benefit and to the detriment of the Company and its stockholders.

144.    Yahoo is obligated to void its employment contracts with the Individual Defendants (current Board members and current and former officers), because those employment contracts are in violation of the ICA.  As such they are voidable and unenforceable at the election of the Company.

KERR
&
WAGSTAFFE
LLP

## COUNT III

**Breach of Fiduciary Duty**
**Against the Individual Defendants**
**(Asserted Derivatively on Behalf of Yahoo)**

145.   Plaintiff repeats and realleges the allegations in the paragraphs above, as if fully set forth herein.

146.   The Individual Defendants are fiduciaries of Yahoo and all of its stockholders and owe them the duty to conduct the affairs of the Company loyally, carefully, faithfully, diligently, and prudently.  This cause of action is asserted based upon the Individual Defendants' acts in violation of Delaware state law, which acts constitute breach of fiduciary duty.

147.   Each of the Individual Defendants, acting individually and in concert, engaged in the conduct alleged herein in reckless disregard and/or intentional breach of his or her fiduciary duties to the Company and its stockholders.

148.   Defendants further breached their fiduciary duties by, *inter alia*, putting their interests ahead of the interests of the Company and its stockholders.

149.   The Company will be irreparably injured as a direct and proximate result of the aforementioned acts and the Company has no adequate remedy at law.

## COUNT IV

**Unjust Enrichment**
**Against the Individual Defendants**
**(Asserted Derivatively on Behalf of Yahoo)**

150.   Plaintiff repeats and realleges the allegations as in the paragraphs above, as if fully set forth herein.

151.   While under the Individual Defendants' leadership, Yahoo has been operating as an investment company while failing to register as such in violation of the ICA.  As a result, the Individual Defendants have exposed the Company to immense liability, including the inability to conduct business.

152.   The Individual Defendants, however, received millions of dollars in salaries, stock, and other payments that were not justified by their failure to direct the Company's

KERR
&
WAGSTAFFE
LLP

operations in conformity with the ICA.  Accordingly, the Individual Defendants have been unjustly enriched at the expense of Yahoo and are therefore liable to the Company.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.     Declaring that Count I is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure and that Plaintiff is an adequate representative of the Class;

B.     Awarding damages to the Class resulting from the Individual Defendants' misconduct alleged herein under Count I;

C.     Declaring that Plaintiff may maintain Count II on behalf and for the benefit of Yahoo, Plaintiff is entitled to rescission of Yahoo's employment contracts of its directors and officers and/or disgorgement of any money paid or payable under such contracts;

D.     Declaring that Plaintiff may maintain Counts III and IV derivatively under Delaware law, Plaintiff is an adequate representative on the Company's behalf, and that demand is excused;

E.     Declaring that the Individual Defendants have breached their fiduciary duties owed to Yahoo;

F.     Determining that statutory relief pursuant to Section 47(b) of the ICA is available to Plaintiff because Yahoo is an unregistered investment company in violation of the ICA, and that Yahoo's making and performance of contracts with the Individual Defendants involves violations of Section 3(a)(1)(C) of the ICA, and that such contracts are void and unenforceable;

G.     Ordering disgorgement of any unjust enrichment resulting from violations of the ICA;

H.     Ordering disgorgement of all profits obtained as a result of the fiduciary misconduct alleged;

I.     Awarding Plaintiff the reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

J.     Granting such other relief as the Court may deem just and proper.



KERR
&
WAGSTAFFE
LLP

1

2    Date: January 27, 2016                     **KERR & WAGSTAFFE LLP**

3

4                                               By: /s/ James M. Wagstaffe
                                                    JAMES M. WAGSTAFFE
5                                                   **KERR & WAGSTAFFE LLP**
6                                                   101 Mission Street, 18th Floor
                                                    San Francisco, CA 94105–1727
7                                                   Telephone: (415) 371-8500
                                                    Fax: (415) 371-0500
8                                                   Email: wagstaffe@kerrwagstaffe.com

9                                                   ROBERT J. GRALEWSKI, JR.
                                                    **KIRBY MCINERNEY LLP**
10                                                  600 B. Street, Suite 1900
                                                    San Diego, California 92101
11                                                  Telephone:  (619) 398-4340
                                                    Fax: (212) 751-2540
12                                                  Email: bgralewski@kmllp.com

13                                                  PETER S. LINDEN
14                                                  IRA M. PRESS
                                                    MELISSA A. FORTUNATO
15                                                  **KIRBY MCINERNEY LLP**
16                                                  825 Third Avenue, 16th Floor
                                                    New York, New York 10022
17                                                  Telephone:  (212) 371-6600
                                                    Fax: (212) 699-1194
18                                                  Email: plinden@kmllp.com
                                                    Email: ipress@kmllp.com
19                                                  Email: mfortunato@kmllp.com

20                                                  LESLIE BLACKNER
21                                                  RICHARD L. STONE
                                                    **BLACKNER STONE & ASSOCIATES, PA**
22                                                  123 Australian Avenue
                                                    Palm Beach, Florida 33480
23                                                  Telephone: (561) 804-9569
                                                    Fax: (561) 659-5754
24                                                  Email: lblackner@aol.com
25                                                  Email: rstoneesq@aol.com

26

27                                                  *Attorneys for Plaintiff and the Proposed Class*

28



## **VERIFICATION**

I, Bruce Both, verify, that:

I am the Plan Manager of UFCW Local 1500 Pension Fund, plaintiff in this action.  I hereby verify that UFCW Local 1500 has been a shareholder of Yahoo! Inc. ("Yahoo") during the period of misconduct complained of in the foregoing Verified Class and Derivative Complaint (the "Complaint") and has continuously held Yahoo common stock since such time, continues to hold such common stock, and intends to continue to hold shares of Yahoo common stock until at least the resolution of this action. Additionally, I have received and reviewed a copy of the Complaint, and I authorize its filing on behalf of UFCW Local 1500.  As to the allegations in the Complaint of which I have personal knowledge, I believe those allegations to be true.  As to those allegations in the Complaint of which I do not have personal knowledge, I rely on my counsel and their investigation, and for that reason, I believe them to be true.

I verify that the foregoing is true and correct to the best of my knowledge.

Executed this 21 day of January, 2016 in Westbury, New York.

Bruce Both
Plan Manager, UFCW Local 1500 Pension
Fund
425 Merrick Avenue,
Westbury, New York 11550