UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UFCW LOCAL 1500 PENSION FUND,

Plaintiff,

v.

MARISSA MAYER, et al.,

Defendants.

Case No. 16-cv-00478-RS

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

## I. INTRODUCTION

This shareholder derivative action seeks to hold individual Yahoo, Inc. directors and officers liable on multiple theories, all predicated on Yahoo allegedly acting as an investment company without registering as such with the Securities and Exchange Commission ("SEC," "Commission"), in violation the Investment Company Act of 1940 ("ICA"). Plaintiff UFCW Local 1500 Pension Fund also asserts one direct claim against Yahoo on the basis of the same allegations. All defendants move to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. The individual director and officer defendants also move to dismiss the derivative claims for plaintiff's failure to make a pre-litigation demand on the board of directors.

Although demand would have been futile for all claims and is therefore excused, all of plaintiff's claims are nonetheless dismissed because they all depend on the faulty theory Yahoo operated illegally from 2013 through the present as an unregistered investment company. Defendants' motions are therefore granted.

## II. BACKGROUND

Back in the salad days of the dot-com boom, Yahoo made tidy profits from its internet

services "operating business," and investment activities made up a considerably smaller portion of its business.  Specifically, in 2000 approximately 57 percent of Yahoo's income came from its operating business, while approximately 44 percent came from investments — mostly from Yahoo's interest in Yahoo Japan.  That year, Yahoo applied to the SEC for an order exempting it from registering as an investment company, which the ICA otherwise requires for any issuer of securities that "is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire investment securities having a value exceeding 40 per centum of the value of such issuer's total assets."  15 U.S.C. § 80a-3(a)(1)(C).  The SEC "found, on the basis of the information set forth in [Yahoo's] application . . . that [Yahoo was] primarily engaged in a business other than that of investing, reinvesting, owning, holding, or trading securities," and granted the application "subject to the conditions contained in the application."  *In the Matter of Yahoo, Inc.*, SEC Release No. 40-24494, 2000 WL 870891 (June 13, 2000) (citing 15 U.S.C. § 80a-3(b)(2)).  These conditions were:  "1. Yahoo! will continue to allocate and utilize its accumulated cash and Cash Management Investments for bona fide business purposes"; and "2. Yahoo! will refrain from investing or trading in securities for short-term speculative purposes."  Yahoo also stated in its application that "in the future the percentage of its total revenues derived from operating activities [would] ordinarily be over 90%."

In the years since the SEC issued that exemption order, Yahoo's business has changed considerably.  Most importantly, it invested $1 billion in Chinese e-commerce company Alibaba in 2005.  Yahoo's investment assets have grown dramatically as a result of its stakes in Alibaba and Yahoo Japan (currently valued at about $27 billion and $7.4 billion, respectively), while the value of its operating business has dwindled rapidly.  While in 2013, operations were responsible for 32.7 percent of Yahoo's net income, in 2014 that number plummeted to 1.2 percent.  In 2015, Yahoo's operations lost over $4 billion, and all of its net income was attributable to its investments.  On the basis of these figures, plaintiff alleges investments accounted for more than 90 percent of the value of Yahoo's total assets for the years 2013, 2014, and 2015, and that Yahoo's operating business is now worth "less than zero."

United States District Court
Northern District of California

In 2013, Yahoo began considering spinning-off its Alibaba holdings into a separate company called Aabaco.  In 2015, Yahoo filed an N-2 with the SEC, stating its intention to go through with the spin-off and register Aabaco as an investment company under the ICA. According to plaintiff, this filing demonstrated defendants' awareness of the ICA's registration requirements, and their understanding that Yahoo was operating in violation of the ICA as an unregistered investment company.  In December 2015, Yahoo abandoned the spin-off plan, apparently because it could not accomplish it tax free.  In January of 2016, it announced plans for a reverse spin-off or sale of most of its operating business.

As a result of these fundamental changes to Yahoo's business, and owing to the Alibaba investment, which plaintiff alleges was not made for a bona fide business purpose, plaintiff argues that Yahoo had lost the protection of its registration exemption by 2013.  Thus, plaintiff argues Yahoo was required to register as an investment company under the ICA.  Because Yahoo has never so registered, plaintiff alleges it has been operating illegally as an unregistered investment company since at least 2013.  Therefore, plaintiff alleges the ICA forbids Yahoo from engaging in interstate commerce, and renders voidable contracts Yahoo has entered into since 2013.  *See* 15 U.S.C. §§ 80a-7(a), 80a-46(b).   According to plaintiff, various Yahoo directors and officers knew or should have known of Yahoo's obligation to register as an investment company, and deliberately disregarded that obligation in order to protect their positions and contracts, which provided for lucrative compensation packages including stock options.

Plaintiff now brings five derivative claims on behalf of Yahoo (a Delaware corporation based in California) against: current Yahoo directors David Filo, Sue James, Thomas J. McInerney, H. Lee Scott, Jr., Jane E. Shaw, and Maynard Webb, Jr.; former directors Charles R. Schwab and Max R. Levchin; current officers Kenneth A. Goldman and Ronald S. Bell; former officer Henrique de Castro; and current CEO and director Marissa Mayer.  The five derivative claims are: violation of section 47(b) of the ICA, breach of fiduciary duty of loyalty, unjust enrichment, violation of Delaware General Corporate Law section 124(2) (which prohibits ultra vires activities by corporate officers and directors), and violation of California's Unfair

Competition Law ("UCL").  Plaintiff also brings a direct claim against Yahoo, alleging violation of Delaware General Corporate Law section 124(1).  All of plaintiff's claims are predicated on Yahoo's alleged operations as an unregistered investment company.

Plaintiff seeks various forms of relief, including: an injunction preventing Yahoo from engaging in interstate commerce, performing any voidable contract, or selling any of its material assets; a declaration that plaintiff can maintain its five derivative claims under Delaware law and is an adequate representative of Yahoo; rescission of voidable contracts and disgorgement of compensation paid or payable under those contracts; statutory relief; disgorgement of any unjust enrichment and all profits obtained from the alleged misconduct; costs, expenses, and other fees; and other relief the Court deems proper.

Yahoo and the individual defendants raise a host of defenses to plaintiff's claims.  Most importantly, defendants argue Yahoo's registration exemption has remained valid since 2000, meaning Yahoo has never been an unregistered investment company and that plaintiff's claims all fail as a matter of law.  In addition to the exemption defense, the individual defendants also argue plaintiff has no standing to bring its derivative claims because it has not sufficiently demonstrated demand futility as required by Federal Rule of Civil Procedure 23.1.  All defendants also argue plaintiff has failed to plead sufficiently a violation of Delaware General Corporate Law section 124. The individual defendants also raise the following defenses: failure to plead bad faith on behalf of the directors; failure to plead sufficient allegations about the officers; that ICA section 47(b) provides no private right of action; that the statute of limitations on the alleged ICA violations has expired; and failure to plead sufficiently breach of fiduciary duty of loyalty, unjust enrichment, or a violation of California's UCL.[1]

---

[1] Yahoo also argues plaintiff has no standing because its derivative complaint verification was not sworn or made under penalty of perjury.  *See* 28 U.S.C. § 1746.  Not only does Rule 23.1 not require a sworn verification, *see* Fed. R. Civ. Pro. 23.1, but courts in any event have granted leave to amend in order for a plaintiff to submit a sworn verification in a derivative action.  *See, e.g.*, *In re Corinthian Colleges, Inc. S'holder Derivative Litig.*, No. SA CV 10-1597-GHK, 2012 WL 8502955, at *16 (C.D. Cal. Jan. 30, 2012).  Plaintiff has submitted a sworn verification with its response to defendants' motions, thereby correcting any possible defect.  *See* Pl.'s Resp. Br. Ex. M.

United States District Court
Northern District of California

### III.  LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  In a shareholder derivative suit, the plaintiff must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).  Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint.  Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

### IV. DISCUSSION

#### A.  Standing for Derivative Claims: Demand Futility

The individual defendants argue plaintiff's derivative claims all fail because plaintiff has not shown that its failure to make a pre-litigation demand upon Yahoo's board was excused for futility, as required by Rule 23.1(b)(3)(B).  Whether a pre-litigation demand is excused for futility is a question of state law of the corporation's state of incorporation.  *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014). Because Yahoo is a Delaware corporation, Delaware law governs this question.  All parties agree Delaware's *Rales* test for determining whether the allegations of a complaint plead demand futility sufficiently — which applies when a derivative claim is premised on the board's inaction — is the proper test for most of the claims at issue.  *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); *see also Saginaw Police & Fire Pension Fund v. Hewlett-Packard Co.*, No. 5:10-CV-4720 EJD, 2012 WL 967063, at *6 (N.D. Cal. Mar. 21, 2012) ("Because Plaintiff

United States District Court
Northern District of California

alleges board inaction, the demand futility for this claim is analyzed under *Rales*.").

Under the *Rales* test, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* at 934. "Directorial interest exists whenever divided loyalties are present, or a director has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders," *id.* at 933 (citations and internal quotation marks omitted), or when "a substantial likelihood of personal liability exists," *Wood v. Baum*, 953 A.2d 136, 141 n.11 (Del. 2008). Plaintiff must show directorial interest with respect to a majority of the board in order to show demand futility. *Rosenbloom*, 765 F.3d at 1150 (citation omitted).[2]

Both parties state the *Rales* test in the disjunctive, as do the cases reciting it. *See, e.g.*, *Baca v. Crown*, 458 F. App'x 694, 697 (9th Cir. 2011) ("Directors, moreover, are deemed interested for purposes of demand futility when they receive a personal financial benefit from a

---

[2] Demand futility is evaluated with respect to the board of directors at the time an amended complaint is filed, unless "the amended derivative claims were 'validly in litigation' before the new board assumed control." *Braddock v. Zimmerman*, 906 A.2d 776, 778-79 (Del. 2006). If the claims were validly in litigation when an old board was in control, then demand futility is evaluated with respect to that old board; otherwise, it is evaluated with respect to the board in control at the time of the filing of the amended complaint. *See id.* at 778-80. To show its claims were validly in litigation under an old board, plaintiff must show: "(1) the original complaint was well pleaded as a derivative action; (2) the original complaint satisfied the legal test for demand excusal; and (3) the act or transaction complained of is essentially the same as the act or transaction challenged in the original complaint." *In re Affiliated Computer Servs., Inc. Shareholders Litig.*, No. CIV.A. 2821-VCL, 2009 WL 296078, at *7 (Del. Ch. Feb. 6, 2009) (citing *Braddock*, 906 A.2d at 786) (internal quotation marks omitted). The practical effect of the "validly in litigation" standard is that a plaintiff gets two bites at the demand futility apple. It can show demand futility with respect to the old board, or else with respect to the current board. Yahoo's board composition changed between the time plaintiff filed its original complaint and amended complaint. Plaintiff argues demand futility should be evaluated with respect to the old board because its claims were "validly in litigation" as a result of the first complaint. The individual defendants disagree. Whether plaintiff is correct is a question that need not be reached. Plaintiff's amended complaint raises allegations about seven current directors. Because plaintiff has shown the current director-defendants are not disinterested, plaintiff has shown directorial interest for a majority of the current thirteen-member board, and it is not necessary to consider whether demand would have been excused with respect to the board in place at the time the original complaint was filed.

United States District Court
Northern District of California

1  transaction that is not equally shared by the stockholders *or* when they face a substantial

2  likelihood of liability for approving a questioned transaction.") (citations and internal quotation

3  marks omitted) (emphasis added); *In re Maxim Integrated Prod., Inc., Deriv. Lit.*, 574 F. Supp. 2d

4  1046, 1059 (N.D. Cal. 2008) ("[A] director is not considered disinterested if the director will

5  receive a personal financial benefit from a challenged transaction that is not equally shared by the

6  stockholders. . . . The requisite doubt may also be shown by alleging particularized facts that

7  individual directors will be exposed to a substantial likelihood of liability as a result of the

8  derivative claim.") (citing *Rales*, 634 A.2d at 936) (internal quotation marks omitted).  Thus,

9  demand is excused on claims challenging a transaction for which a director received or will

10 receive a personal financial benefit not enjoyed by shareholders, even if those claims are not likely

11 to present a director with a substantial likelihood of personal liability.  *See Calma on Behalf of*

12 *Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 574-77 (Del. Ch. 2015) (excusing demand for

13 derivative claims upon finding that the defendant's directors had a personal financial interest in the

14 challenged transaction, without considering whether they faced a substantial likelihood of personal

15 liability).

16        Because a director's personal financial interest alone can excuse demand, it may be

17 excused for a claim that will ultimately fail on its legal merits.  For instance, in *Calma* the

18 Delaware Court of Chancery deemed demand excused for a waste of corporate assets claim

19 predicated on alleged excessive compensation because the defendant directors had a personal

20 financial interest in the challenged compensation.  *Id.*  Nonetheless, the Court of Chancery

21 dismissed the claim because the plaintiff's conclusory allegations failed to state a claim for waste.

22 *Id.* at 590-91.

23        The individual defendants' arguments against demand futility primarily mirror their

24 arguments on the merits for why plaintiff has failed to state any claims.  If correct, defendants'

25 arguments naturally preclude plaintiff from showing that director-defendants face a substantial

26 likelihood of personal liability.  *See infra* Part IV.C (dismissing all claims on the merits).

27 Defendants' arguments, however, do not address the fact that plaintiff's claims all challenge

28

United States District Court
Northern District of California

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
CASE NO.  16-cv-00478-RS

United States District Court
Northern District of California

transactions — Yahoo's contracts with and compensation of its directors — from which the

defendant-directors derive personal financial benefits "not equally shared by the stockholders."

Defendants' response is that plaintiff's ability to show demand futility with respect to a claim is

"inextricably linked" to their ability to state a claim on the merits, *see* Mot. to Dismiss Hr'g Tr.

31-32, but defendants do not convincingly say why this is so.  At best, this argument simply

restates that demand cannot be excused when plaintiff cannot state a claim — a contention

encompassed by the "substantial liability" prong of the *Rales* test.  *Calma*, however, makes clear

the separate force of the "personal financial benefit" prong of the *Rales* test:

> [In] a derivative challenge to director compensation . . . the law is skeptical that an individual can fairly and impartially consider whether to have the corporation initiate litigation challenging his or her own compensation, regardless of whether or not that compensation is material on a personal level.  [I]n a derivative challenge to director compensation, there is a reasonable doubt that the directors who received the compensation at issue — regardless of whether that compensation was material to them on a personal level — can be sufficiently disinterested to consider impartially a demand to pursue litigation challenging the amount or form of their own compensation. . . .  [T]his conclusion has even more force where, as here, the directors received equity compensation from the corporation because those individuals "have a strong financial incentive to maintain the status quo by not authorizing any corrective action that would devalue their current holdings or cause them to disgorge improperly obtained profits."

114 A.3d at 576 (citations and internal quotation marks omitted).   One way or another, each of

plaintiff's claims challenges director compensation, thereby satisfying the *Rales* test and stating

with particularity why demand should be excused.

Because plaintiff's § 47(b) claim charges that each director's contract is voidable and

unenforceable, plaintiff has demonstrated reasonable doubt about the disinterestedness of the

directors on the basis of personal financial benefits enjoyed by directors unequally from

shareholders.  Likewise, plaintiff's UCL claim is predicated in part on Yahoo allegedly entering

into contracts with and compensating its officers and directors in violation of the ICA —

transactions from which the defendant directors received personal financial benefits not enjoyed by shareholders.  Similarly, the ultra vires claim charges that Yahoo's directors, in entering into their own contracts and those with the officers while the company was allegedly forbidden from engaging in interstate commerce for failing to register under the ICA, acted in violation of Delaware General Corporate Law section 124(2).  Because plaintiff's breach of fiduciary duty of loyalty claim rests on its ultra vires claim, it too challenges personal financial benefits not enjoyed by shareholders.  Finally, plaintiff's unjust enrichment claim is premised on the directors and officers paying themselves in stock and salaries while failing to register Yahoo under the ICA. Moreover, plaintiff's prayer for relief seeks "rescission of Yahoo's employment contracts with its directors and officers and/or disgorgement of any money paid or payable under such contracts," a determination that the individual defendants' contracts are voidable, and an injunction preventing Yahoo from further contracting with the individual defendants.  Am. Compl. ¶¶ A, C, E, F.  Thus, demand is excused for plaintiff's derivative claims because they seek to challenge personal financial benefits enjoyed by directors unequally from shareholders.

This makes intuitive sense.  There is little reason to require shareholders to engage in the futile exercise of making a pre-litigation demand of the board of directors for claims predicated on, and seeking to recover, the directors' compensation.  Whether or not such claims are legally viable, the willingness of the implicated board of directors to address them is subject to more than reasonable doubt.

Defendants' also make one demand-specific defense (in that it does not overlap with their merits defenses), which fails for similar reasons.  Defendants argue plaintiff's breach of fiduciary duty of loyalty claim is actually an excessive compensation claim, and that plaintiff has failed to show interested directors because "directors are generally not considered interested under . . . *Rales* simply because they receive compensation from the company."  *Calma*, 114 A.3d at 576 (citations and internal quotation marks omitted).  But again, defendants ignore the fact that *Calma* strongly supports finding interested directors when their compensation is directly implicated by a claim.  *See id.*  Moreover, plaintiff does not draw the directors' disinterest into doubt merely by

United States District Court
Northern District of California

1  arguing that the directors were compensated for their service to Yahoo.  This claim rests on

2  defendants' alleged violations of Delaware's ultra vires law, which in turn rest on defendants'

3  alleged violations of the ICA by receiving compensation and entering into contracts while Yahoo

4  was an unregistered investment company.  Because this challenged transaction resulted in personal

5  financial benefit for the directors, demand is to be excused for plaintiff's breach of fiduciary duty

6  of loyalty claim, as it is for their other claims.

7  **B.  Failure to State a Claim:  ICA Exemption Defense**

8  Although the SEC has never revoked Yahoo's exemption order, plaintiff argues the

9  exemption is no longer valid — either because Yahoo does not qualify for the exemption, or

10  because it violated a condition of its exemption by making an investment in Alibaba that was not

11  for "bona fide business purposes."  Thus, plaintiff argues Yahoo was required to register as an

12  investment company under the ICA.  Because all of plaintiff's claims for relief turn on Yahoo's

13  failure to register as an investment company when the ICA allegedly required it to do so, the

14  overarching legal question in deciding this motion is whether a court is empowered to find, at the

15  behest of a private litigant, that a company has lost the protection of a registration exemption.  If

16  not — if the exemption retains force of law until revoked by the SEC or the company chooses to

17  register as an investment company — then plaintiff's claims must be dismissed for lacking the

18  support of a cognizable legal theory.  *Navarro*, 250 F.3d at 732.

19  For the purposes of the ICA, an "investment company" is any issuer of a security that:

20  (A) is or holds itself out as being engaged primarily, or proposes to
21  engage primarily, in the business of investing, reinvesting, or trading
    in securities;
22  (B) is engaged or proposes to engage in the business of issuing face-
    amount certificates of the installment type, or has been engaged in
23  such business and has any such certificate outstanding; or
    (C) is engaged or proposes to engage in the business of investing,
24  reinvesting, owning, holding, or trading in securities, and owns or
    proposes to acquire investment securities having a value exceeding
25  40 per centum of the value of such issuer's total assets (exclusive of
26  Government securities and cash items) on an unconsolidated basis.

27  15 U.S.C. § 80a-3(a).  Investment companies that do not register with the SEC are forbidden from

28  ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
    CASE NO. 16-cv-00478-RS

10

engaging in interstate commerce, *id.* § 80a-7(a), and any contracts they enter into can be held

unenforceable, "unless a court finds . . . enforcement would produce a more equitable result," *id.*

§ 80a-46(b).  The ICA, however, excludes from the definition of "investment company" any issuer

of securities "which the Commission, upon application by such issuer, finds and by order declares

to be primarily engaged in a business or businesses other than that of investing, reinvesting,

owning, holding, or trading in securities either directly or (A) through majority-owned subsidiaries

or (B) through controlled companies conducting similar types of businesses."  *Id.* § 80a-3(b)(2).

Thus, an issuer of securities that otherwise meets the statutory definition of an "investment

company" can forego registration with the SEC and continue to engage in interstate commerce so

long as it obtains an SEC exemption order.

　　　　　To determine whether a company is entitled to an exemption, the SEC ordinarily relies on

the *Tonopah* factors.  *S.E.C. v. Nat'l Presto Indus., Inc.*, 486 F.3d 305, 312-15 (7th Cir. 2007)

(citing *In re Tonopah Mining Co.*, 26 S.E.C. 426 (1947)).  The *Tonopah* factors are "1) the

company's historical development; 2) its public representations of policy; 3) the activities of its

officers and directors; and, most important, 4) the nature of its present assets; and 5) the sources of

its present income."  26 S.E.C. 426.

　　　　　Exemptions are not eternal, however.  "Whenever the Commission, upon its own motion

or upon application, finds that the circumstances which gave rise to the issuance of an order

granting an application . . . no longer exist, the Commission shall by order revoke such order."  15

U.S.C. § 80a-3(b)(2).  The ICA empowers the SEC to investigate whether a company has violated

an exemption order, *see id.* § 80a-41(a), and to bring suit in a District Court to enforce compliance

with any order, *id.* § 80a-41(d).  Orders granting, denying, or revoking exemptions are also

reviewable on appeal to the appropriate United States Court of Appeals.  *See id.* § 80a-42(a).

Other than this provision for appeal, the ICA is silent as to the role of the courts in considering a

company's eligibility for an exemption.

　　　　　Nonetheless, the ICA's language strongly indicates there is no role for the courts to find, in

the first instance, that a company should be stripped of its exemption and therefore deemed an

unregistered investment company that must be enjoined from engaging in interstate commerce. Because the statute only contemplates revocation of an exemption by the SEC, a judicial revocation would be an improper encroachment upon the statutory scheme. Thus, it is only for the SEC to revoke an exemption and deem a company an unregistered investment company forbidden from engaging in interstate commerce.

A potentially separate question is whether a court can find that a company, at some point in the past, failed to comply with its exemption or qualify for an exemption, and thus operated illegally as an unregistered investment company. The ICA is silent on this sort of *retrospective* examination, presumably because its remedy for undeserved or violated exemptions is *contemporaneous* revocation by the SEC. If the SEC fails to revoke an exemption, the ICA makes no suggestion that the SEC's decision should be second-guessed by a court subsequently considering whether the exemption was undeserved or violated and therefore void. The plain language of the statute supports this interpretation. By definition, any company that the SEC "finds and by order declares to be primarily engaged in a business or businesses other than that of investing, reinvesting, owning, holding, or trading in securities" is not an investment company. *Id.* § 80a-3(a), (b)(2). The ICA does not exempt from the definition only those companies that show continuous entitlement to, or compliance with, an exemption; it exempts all companies found and declared exempt by the SEC. When a company, like Yahoo, has a validly *obtained* exemption, by law it is not an investment company under the ICA. *Id.* § 80a-3(b)(2). If the SEC "finds that the circumstances which gave rise to the issuance of an order granting an application" no longer exist, then it shall revoke the exemption. *Id.* Unless and until an exemption is revoked, or a company voluntarily registers as an investment company, it is not an investment company for the purposes of the ICA.

Plaintiff identifies no cases in which a court has either retrospectively or prospectively deprived a company of a registration exemption, and the only courts to consider their power to invalidate an SEC order in this domain have determined they have no such power. *See Omni Fin. Corp. v. Cohen*, No. 91-Civ. 6837 (RO) (THK), 1994 WL 97125, at *5 (S.D.N.Y. Mar. 22, 1994)

United States District Court
Northern District of California

1 ("First, the Investment Company Act contains no express grant of authority for this Court to

2 invalidate, at the behest of a private party, an order of the SEC declaring that a company ceased to

3 be an investment company subject to the ICA, upon a finding of fraudulent misrepresentation in

4 the application for such order.  Furthermore, no cases have been cited to the Court, and none have

5 been found, holding that a court has such authority.  In fact, recognition of a private right of action

6 on the part of shareholders to sue in district court for invalidation of orders of the SEC affecting

7 the companies in which they hold stock is inconsistent with the existing statutory scheme.");

8 *Manacher v. Reynolds*, 165 A.2d 741, 746 (Del. Ch. 1960) (noting "the doubtful point that [a]

9 court has the power to consider [whether a company has lost its exemption] in view of the

10 language of" section 80a-3(b)(2)).

11      Plaintiff makes three counterarguments on this subject.  First, plaintiff references two SEC

12 documents it says show a registration exemption is void whenever the recipient company fails to

13 comply with its terms and conditions, even if no formal revocation order has been issued.  *See*

14 *Del. Invs. Dividend & Income Fund, Inc., et al.*, Release No. IC-27475; 812-12420, 2006 WL

15 2570218, at n.3 (Sept. 8, 2006) ("The Commission also reiterates that any exemption provided by

16 an order issued under the Act is available only to a person that complies with the terms and

17 conditions set forth in the application based on which the exemption was granted."); Clearstream

18 Banking, S.A.; Notice of Filing of Application to Continue an Existing Exemption from Clearing

19 Agency Registration, Exchange Act Release No. 53851, 2006 WL 1438715, at *2 (May 23, 2006)

20 ("The 1997 Exemptive Order was based upon representations and facts contained in Cedel's Form

21 CA-1 and other information known to the Commission regarding the substantive aspects of

22 Cedel's application, including the ownership structure and corporate governance.  As a result,

23 changes in the representations and facts as then existed and were presented to the Commission

24 require a modification to the 1997 Exemptive Order.").  Although these documents support the

25 notion that exemptions are not eternal, and are subject to the exempted company's compliance

26 with their terms, they say nothing about the ability of private litigants to compel a court to find

27 that a company has lost the protection of an exemption.  If anything, they support the contrary

28

1    notion: that it is the province of the SEC to determine when a company is no longer entitled to a

2    registration exemption and thereby revoke it.  *See Del. Invs. Dividend & Income Fund*, 2006 WL

3    2570218 ("*The Commission* is issuing this notice of *the Commission's* intention to rescind the

4    Exemptive Order on the basis of the Order Finding Violations.") (emphasis added).

5           Second, plaintiff raises the somewhat indirect argument that Yahoo lost the protection of

6    its exemption because it failed to seek "no-action" relief to determine if its exemption remained

7    valid.  The "no-action" process is a means by which a company can seek the SEC's opinion on

8    whether a changed or changing circumstance will affect the status of an SEC order — like a

9    registration exemption.  *See* Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in*

10   *SEC No-Action Letters: Current Problems and A Proposed Framework*, 83 Cornell L. Rev. 921,

11   929-43 (1998); Securities & Exchange Commission, *No-Action Letters*,

12   https://www.sec.gov/answers/noaction.htm.  The process is voluntary.  Junis L. Baldon, *Taking A*

13   *Backseat: How Delaware Can Alter the Role of the Sec in Evaluating Shareholder Proposals*, 4

14   Entrepreneurial Bus. L.J. 101, 125 (2009) (referencing the "voluntary nature" of the "SEC no-

15   action letter process"); *see* Securities & Exchange Commission, *No-Action Letters* ("An individual

16   or entity who is not certain whether a particular product, service, or action would constitute a

17   violation of the federal securities law *may* request a 'no-action' letter from the SEC staff.")

18   (emphasis added).  Nonetheless, plaintiff argues Yahoo cannot forego the "no-action" process and

19   continue relying on an aging exemption because it would effectively be converting an exemption

20   predicated on the existence of certain past circumstances into a permanent exemption.  This

21   argument seems to depend on the unstated premise that the SEC will invalidate a standing

22   exemption only when incited to act by the filing of a "no-action" letter.  Even if this premise were

23   true (and it appears not to be, *see Del. Invs. Dividend & Income Fund*, 2006 WL 2570218), it

24   would still not support the argument that a private litigant can call on a court to find a company's

25   exemption void.  Relying entirely on exempted companies to self-report the expiration of their

26   exemptions through the filing of "no-action" letters, a suboptimal regulatory scheme to be sure,

27   would not command the conclusion that there is a judicial role in policing the ongoing validity of

28

United States District Court
Northern District of California

1  exemptions, especially given the ICA's silence on the subject.

2          Finally, plaintiff claims two cases support the proposition that a district court can consider

3  the validity of an SEC exemption order at the behest of a private litigant.  Neither case is on point.

4  *See Tinney v. Geneseo Commc'ns, Inc.*, 457 F. Supp. 2d 495 (D. Del. 2006) (holding, in a

5  derivative suit challenging alleged short-swing trading, that an SEC clarification giving retroactive

6  effect to SEC Rule 16b-3(d) was a valid "interpretive clarification," rather than an administrative

7  rule) (citing 15 U.S.C. § 78p (banning short swing trading but authorizing the SEC to promulgate

8  exemption rules); 17 C.F.R. § 240.16b-3); *Roth v. Reyes*, No. C 06-02786 CRB, 2007 WL 518621,

9  at \*1 (N.D. Cal. Feb. 13, 2007) (considering the scope and meaning of SEC Rule 16b-3(d)).

10  These cases simply do not speak to the power of a District Court, at the behest of a private litigant,

11  to invalidate an SEC order validly issued to pursuant to 15 U.S.C. § 80a-3(b)(2) and never

12  rescinded.

13          Because the SEC never revoked Yahoo's registration exemption, Yahoo never operated

14  illegally as an unregistered investment company, and plaintiff's claims all fail as a matter of law.

15  Thus, plaintiff's claims are dismissed with leave to amend.

16                    **C.  Failure to State a Claim:  Claim-Specific Defenses**

17          In addition to their overarching argument that Yahoo never operated as an unregistered

18  investment company, defendants advance numerous arguments for why each claim should be

19  dismissed.  These mirror most of their arguments for why plaintiff has not sufficiently

20  demonstrated demand futility.  *See supra* Part IV.A (excusing demand).  In several instances, they

21  provide an independent basis for dismissal in addition to the ICA exemption defenses. *See supra*

22  Part IV.B.

23                              1.  *ICA § 47(b) Claim*

24          Plaintiff brings a claim under ICA § 47(b), which deems any contract entered into in

25  violation of the ICA unenforceable and subject to rescission. 15 U.S.C. § 80a-46(b). Defendants

26  argue plaintiff fails to state a claim under ICA § 47(b) both because the statute provides no private

27

28                                          ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
                                                          CASE NO. 16-cv-00478-RS

                                                  15

1  right of action,[3] and because the applicable statute of limitations has expired.

2                a. *Private Right of Action*

3         Section 47(b) does not explicitly provide a private right of action, so plaintiff must show

4  that one is "implied from the statute's language, structure, context, and legislative history."

5  *Northstar Fin. Advisors, Inc. v. Schwab Investments*, 615 F.3d 1106, 1115 (9th Cir. 2010)

6  (citations omitted).  Specifically relevant are: the presence of "rights-creating language," the

7  presence of private causes of action in analogous provisions implying "congressional intent not to

8  create an implied cause of action" elsewhere, and "whether Congress designated a method of

9  enforcement other than through private lawsuits."  *Id.* (citations and internal quotation marks

10  omitted).

11         Relying on the fact that section 36(b) of the ICA explicitly provides for a private right of

12  action (as did the original section 30(f)), and that sections 6 and 42 endow the SEC with broad

13  investigatory and enforcement powers, the Ninth Circuit has held that no private right of action is

14  implied in section 13 of the ICA.  See *id.* at 1115-22 (citations omitted).  Unlike section 13,

15  however, section 47(b) of the ICA *does* contain rights-creating language.  It makes contracts made

16  in violation of the ICA unenforceable by either party unless a court finds that equity demands

17  otherwise, and contemplates that parties will seek rescission of such contracts in court.  *Id.* at §

18  80a-46(b).  Nonetheless, it is inappropriate to find an implied right of action in section 47(b) when

19  "thorough delegation of authority to the SEC to enforce the ICA strongly suggests Congress

20  intended to preclude other methods of enforcement," *Northstar*, 615 F.3d at 1116-17 (citing

21  *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)), and when "it is evident from the text of the

22  ICA that Congress knew how to create a private right of action to enforce a particular section of

23  the Act when it wished to do so," *id.* at 1117.  Other courts have also reached the conclusion that

---

[3] In making this argument, defendants also contend section 47(b) provides a remedy only for a predicate violation of some other section of the ICA, and that plaintiff has alleged no such violations.  Plaintiff plainly alleges, however, that Yahoo violated ICA sections 7 and 8 when it failed to register as an investment company and engaged in interstate commerce while an unregistered investment company.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    section 47(b) contains no implied private right of action.  *See, e.g.*, *Santomenno ex rel. John*

2    *Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 187 (3d Cir. 2012).

3         Plaintiff's argument that not reading a private right of action into section 47(b) would

4    leave it superfluous is well-taken but ultimately unavailing because 47(b) relief may be available

5    in an action brought under section 36(b).  *See* 15 U.S.C. § 80a-35(b); *Tarlov v. Paine Webber*

6    *Cashfund, Inc.*, 559 F. Supp. 429, 438 (D. Conn. 1983) (permitting the plaintiff to pursue 47(b)

7    relief in an action under section 36(b)).  Plaintiff also argues section 47(b) should be read *in pari*

8    *materia* with section 29(b) of the Exchange Act of 1934, 15 U.S.C § 78cc(b), which has been read

9    to contain an implied private right of action.  *See Reg'l Properties, Inc. v. Fin. & Real Estate*

10   *Consulting Co.*, 678 F.2d 552, 558 (5th Cir. 1982) (recognizing that section 29(b) provides a

11   private right of action); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 880 (D. Md. 2005)

12   ("Courts generally look to Section 29(b) . . . of the Securities Exchange Act of 1934 . . . for

13   guidance when interpreting Section 47(b).") (citations omitted).  This argument also comes up

14   short given the language and structure of the ICA, and has been rejected elsewhere.  *See Smith v.*

15   *Oppenheimer Funds Distrib., Inc.*, 824 F. Supp. 2d 511, 520 (S.D.N.Y. 2011) ("[A]fter *Sandoval*,

16   the mere assertion of similarity between different statutes is no substitute for a careful analysis of

17   the proposed private right of action against the text and structure of the entire statute at issue.")

18   (citing 532 U.S. 275).  In short, no implicit private right of action arises under section 47(b) in this

19   context.

20                                b.  *Statute of Limitations*

21         The parties agree that if plaintiff is permitted to bring a claim under section 47(b), it is

22   subject to a one-year statute of limitations.  *See Friedlob v. Trs. of the Alpine Mut. Fund Tr.*, 905

23   F. Supp. 843, 855-56 (D. Colo. 1995).  Because plaintiff alleges Yahoo was acting as an

24   unregistered investment company since "early 2013," but did not file its original complaint until

25   January 27, 2016, defendants argue plaintiff's claim is time-barred.  In response, plaintiff argues

26   its claim is preserved by the discovery rule, and by the fact that Yahoo is engaged in continuing

27   violations of the ICA.

28

*i. Discovery Rule*

According to plaintiff, it was not possible to discern that Yahoo was acting as an unregistered investment company until it released its 2015 financial figures and cancelled the Alibaba spin-off, because without Alibaba Yahoo would not have been an unregistered investment company. These arguments are unavailing. For one thing, just because Yahoo's aborted spin-off of Alibaba could have remedied its alleged ICA violation does not mean plaintiff had no claim for relief until Yahoo abandoned the spin-off plan on December 9, 2015. Plaintiff's overarching legal theory is that Yahoo is and has been an unregistered investment company since at least 2013. Yahoo may have been close to correcting its alleged ICA violation with the Alibaba spin-off, but under plaintiff's theory of the ICA's registration requirement, Yahoo would have nonetheless been an unregistered investment company until it actually completed the spin-off. Thus, plaintiff did not learn of a previously unknown ICA violation from Yahoo's abandonment of the spin-off plan..

Moreover, plaintiff cannot argue both that Yahoo's 2013 financials show Yahoo was an unregistered investment company during that year, and that plaintiff could not recognize that Yahoo was an unregistered investment company for 2013 until after the release of Yahoo's even-more-investment-heavy 2015 financials. Plaintiff's entire argument is based on Yahoo allegedly having been an unregistered investment company since at least 2013. For plaintiff to show that "Yahoo's status as an investment company could not have been determined solely from the 2013 financials," plaintiff must demonstrate that in 2015 it discovered something previously unknown or unknowable about Yahoo's 2013 financial figures, an attempt not reflected in its pleadings. Thus, the discovery rule does not preclude the application of the statute of limitations to plaintiff's claim. *See also Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1353 (D.N.J. 1996) (concluding that the discovery rule does not apply to claims that a company was unregistered in violation of the ICA because "an investment company cannot conceal the fact that it is unregistered, and while it may misrepresent that it is properly registered, or that registration is not required, it cannot prevent an investor from discovering the true facts as to the lack of or requirement of its registration.").

*ii. Continuing Violations*

According to plaintiff, its claim is not-time barred because it is based on Yahoo's contracts with its directors and officers, and a new violation arose each time Yahoo entered into a new annual employment contract or materially amended such agreement.  Defendant argues the continuing violation doctrine should not apply here because other courts have not applied it to failure-to-register claims, and that Yahoo's challenged contracts are merely a "continual ill effect" of Yahoo's alleged failure to register, as opposed to continuing violations.

If a company committed a violation of the ICA simply by failing to register as an investment company, the continuing violation doctrine likely would not apply to pure failure-to-register claims, because adopting it "would annul the application of a limitations period for nonregistration claims."  *Id.* at 1352.  "Indeed, to consider an investment company's failure to register with the SEC as a continuing violation would ignore the whole purpose behind a statute of limitations and the importance of the policy of repose."  *Id.*  An ICA violation, however, does not occur when an investment company fails to register under the ICA.  *See* 15 U.S.C. § 80a-8 ("Any investment company organized or otherwise created under the laws of the United States or of a State *may* register . . . .") (emphasis added).  An ICA violation occurs when an unregistered investment company transacts interstate commerce.  *See id.* § 80a-7(a).  Thus, it is wrong to say that Yahoo's annual contracts with its officers and directors were a continual ill effect "from the original alleged violation — the alleged failure to register, in violation of the ICA."  Defs.' Reply Br. 22.  The alleged failure to register is not a violation; the contracts subsequently entered into potentially are.  Because plaintiff alleges continuing violations of the ICA, as opposed to the continuing ill effects of an earlier violation, the continuing violations doctrine saves their section 47(b) claim from the otherwise-applicable statute of limitations.  *See Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.") (citation omitted); *Valdez v. JPMorgan Chase Bank, N.A.*, No. C 13-2450 SC, 2013 WL 4516366, at *2 (N.D. Cal. Aug. 23, 2013) ("The 'continuing violation doctrine' extends the accrual of a claim if a chain of unlawful acts connects

1    an earlier claim to a claim arising within the limitations period.") (citing *Ward*, 650 F.2d at 1147).

2    *But see Blatt*, 916 F. Supp. at 1348-52 (rejecting "plaintiffs' argument that World Fund's failure to

3    register with the SEC is a continuing violation" even though the plaintiffs' claim was apparently

4    based on the defendant's transaction of interstate commerce as an unregistered investment

5    company).  Thus, while the applicable statute of limitations would have run for interstate

6    transactions completed before January 27, 2015, the continuing violations doctrine preserves as

7    actionable all alleged ICA violations in plaintiff's complaint.  Nonetheless, as noted above,

8    plaintiff's section 47(b) claim is dismissed because no ICA violation has occurred and section

9    47(b) provides no private right of action.

10                                    2. *Breach of Fiduciary Duty of Loyalty*

11           Plaintiff alleges the individual defendants recklessly or intentionally breached their

12   fiduciary duties of loyalty when they failed to register Yahoo under the ICA and acted in violation

13   of Delaware law.[4]  Because the defendants' activities do not amount to ultra vires acts supporting

14   liability under Delaware law, *see infra* Part IV.C.4, and because Yahoo was not required to

15   register under the ICA, *see supra* Part IV.B, this claim necessarily fails.[5]

16           Defendants also argue plaintiff fails to state a claim of breach of fiduciary duty of loyalty

17   on behalf of any of the officer-defendants because it "fails to allege facts demonstrating that [they]

18   took part in the challenged conduct, and . . . failed to demonstrate the due care attendant to [their]

19   particular office in doing so."  *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 573 (Bankr. D. Del.

20   2008). This is true of Officers Goldman and de Castro, because plaintiff has failed to allege

21

22   [4] Defendants attempt to characterize this claim as a *Caremark* claim, "possibly the most difficult
     theory in corporation law upon which a plaintiff might hope to win a judgment."  *In re Caremark*
23   *Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  But when *Caremark* referred to
     this "difficult theory," it was referring to a claim that the director-defendants failed to monitor
24   corporate operations, which is not alleged here.  *Id.*  *Caremark* did not include a claim of "director
     self-dealing," as in the instant case.  *Id.*  Thus, this claim is not subject to the heightened standard
25   of *Caremark.*  To the extent that defendants' defenses to this claim are based on plaintiff's failure
     to satisfy the standard for pleading a *Caremark* claim, they fail.
26
     [5] To the extent this breach claim is premised on defendants' decision to abandon the Alibaba spin-
27   off plan, plaintiffs have abandoned it.

28

United States District Court
Northern District of California

1   sufficient facts to state any claim against them.  *See infra* Part IV.C.7.  It is not true of General

2   Counsel Bell, who could reasonably be inferred to have been involved in all decisions effecting

3   Yahoo's ICA compliance status when Yahoo was allegedly operating in violation of the Act.  *See*

4   *id.*  Defendants' argument similarly does not defeat any claims against CEO Mayer, because she is

5   also a director of the company.

6                                   3.  *Unjust Enrichment*

7           The parties agree plaintiff's unjust enrichment claim cannot succeed if plaintiff's breach of

8   fiduciary duty of loyalty claim fails.  *See Taylor v. Kissner*, 893 F. Supp. 2d 659, 674 (D. Del.

9   2012) (dismissing an unjust enrichment claim where the plaintiff had "not properly alleged any

10  breach of fiduciary duty or any other theory providing a factual basis to conclude that the

11  compensation received by each Defendant was paid without justification"); *Calma*, 114 A.3d at

12  591 (Del. Ch. 2015) ("At the pleadings stage, an unjust enrichment claim that is entirely

13  duplicative of a breach of fiduciary duty claim — i.e., where both claims are premised on the same

14  purported breach of fiduciary duty — is frequently treated in the same manner when resolving a

15  motion to dismiss.") (citation and internal quotation marks omitted).  Because plaintiff's breach of

16  fiduciary duty of loyalty claim should be dismissed, *see supra* Part IV.B.2, so too should this one.

17          Defendants argue there are additional reasons for dismissing this claim.  First, they insist a

18  claim for unjust enrichment cannot proceed when a contract governs the relationship between the

19  parties.  *See BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, No. CIV.A.

20  3099-VCN, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009) ("If a contract comprehensively

21  governs the parties' relationship, then it alone must provide the measure of the plaintiff's rights

22  and any claim of unjust enrichment will be denied.").  If, like here, the "validity of that agreement

23  is challenged, however, claims of unjust enrichment may survive a motion to dismiss. . . . This

24  may be the case where a plaintiff pleads a right to recovery not controlled by contract or where it

25  is the [contract], itself, that is the unjust enrichment." *Great Hill Equity Partners IV, LP v. SIG*

26  *Growth Equity Fund I, LLLP*, No. CV 7906-VCG, 2014 WL 6703980, at *27 (Del. Ch. Nov. 26,

27  2014) (citation and internal quotation marks omitted) (alteration in original).  Moreover, Delaware

28

case law does not support defendants' argument that a contractual relationship precludes an unjust enrichment claim unless the claim is pled as an alternative to a breach of contract claim. *See McPadden v. Sidhu*, 964 A.2d 1262, 1276 (Del. Ch. 2008) (denying a motion to dismiss an unjust enrichment claim where the parties had a contractual relationship but no breach of contract claim had been pled). Thus, the fact that defendants were under contract with Yahoo does not preclude an unjust enrichment claim in this case.

Defendants also argue plaintiff's factual allegations are insufficient to plead an unjust enrichment claim — specifically that it has not alleged defendants received compensation without justification, against the "fundamental principles of justice or equity and conscience." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988). Plaintiff makes the conclusory allegation that defendants were compensated excessively for their services to Yahoo because Yahoo's revenues came overwhelmingly from investments, but never says why such compensation violates the "fundamental principles of justice or equity and conscience." *See, e.g.*, Am. Compl. ¶ 37. Because plaintiff fails to offer any facts indicating defendants' compensation was unjustified, it has failed to plead an unjust enrichment claim.

### 4. *Ultra Vires Claims under Delaware General Corporate Law § 124*

Plaintiff advances an ultra vires claim directly against Yahoo under Delaware General Corporate Law section 124(1), which allows shareholders to "to enjoin the doing of any act or acts" that "the corporation was without capacity or power to do." 8 Del. C. §§ 124, 124(1). Plaintiff also advances an ultra vires claim derivatively, on behalf of Yahoo, against the individual defendants under Delaware General Corporate Law section 124(2), which permits a derivative action for damages against officers and directors for any "unauthorized act." 8 Del. C. §§ 124, 124(2). According to plaintiff, Yahoo's contracts with its officers and directors in violation of the ICA were unauthorized acts supporting ultra vires liability. Defendants argue, correctly, no ultra vires claims can be maintained because they did not violate the ICA. *See supra* Part IV.B.

Moreover, defendants argue ultra vires claims are available only for actions unauthorized

United States District Court
Northern District of California

1  by corporate charter, and not merely actions unauthorized by law.[6]  Predictably, plaintiff argues a

2  section 124 claim is available for allegedly illegal corporate activity.  Neither party produces any

3  authority directly supporting their argument.  Defendants' best, *In re eBay*, is a federal decision

4  holding that, under Delaware law, ultra vires actions are those that violate a corporate charter, not

5  those that are illegal.  *See In re eBay, Inc., Derivative Litig.*, No. CIV. 10-470-LPS, 2011 WL

6  3880924, at *8 (D. Del. Sept. 2, 2011) (citing *Solomon v. Armstrong*, 747 A.2d 1098, 1114 n.45

7  (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000) ("In the context of defining void acts [under

8  Delaware law], ultra vires acts fall under a much more narrow definition which includes acts

9  specifically prohibited by the corporation's charter.").  *In re eBay* did not deal with section 124

10  claims.  *See id.* at *1.

11      Plaintiff's cases primarily support the notion that illegal acts are void (as opposed to

12  voidable), and can be described generally as ultra vires; these cases do not deal with section 124

13  claims either.  *See, e.g.*, *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 896 (Del. Ch. 1999)

14  ("Voidable acts are traditionally held to be ratifiable because the corporation can lawfully

15  accomplish them if it does so in the appropriate manner. . . . In contrast, void acts are said to be

16  non-ratifiable because the corporation cannot, in any case, lawfully accomplish them.  Such void

17  acts are often described in conclusory terms such as 'ultra vires' . . . .").

18      Section 124 generally contemplates ultra vires acts as those "that the corporation was

19  without capacity or power to do."  *See* 8 Del. C. § 124.  To the extent that it refers to "capacity and

20  power" it calls to mind the empowering language of corporate charters and other sections of the

21  same chapter of the Delaware General Corporate Law, *see, e.g.*, 8 Del. C. §§ 121-22 (delineating

22  general and specific powers of Delaware corporations), more than proscriptive laws like the ICA.

23  This fact, combined plaintiff's inability to identify any case in which a plaintiff has maintained a

24

25

26

27

---

[6] Yahoo's charter states:  "The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware." (Individual Defs.' Mot. to Dismiss Ex. B, Art. III.).  Plaintiff does not advance an argument that Yahoo or its officers and directors acted in violation of the charter by violating the ICA.

28

United States District Court
Northern District of California

1   section 124 claim premised on the allegation that a corporation operated illegally, compels the

2   conclusion that a section 124 claim must depend on conduct allegedly beyond that authorized by a

3   corporate charter (or perhaps the Delaware General Corporate Law), and that allegedly illegal

4   conduct in general is not sufficient to maintain a claim.

5                                           5.  *UCL Claim*

6          Defendants argue plaintiff fails to state a claim under California's UCL, Cal. Bus. & Prof.

7   Code § 17200, *et seq.*, both because plaintiff fails to allege a viable predicate legal violation

8   supporting liability under the UCL's unlawful prong, and because the UCL protects only

9   consumers and competitors and is thus inapplicable.  Defendants' first theory necessarily

10  succeeds, because plaintiff has not shown an ICA violation.  *See supra* Part IV.B; *Fabozzi v.*

11  *StubHub, Inc.*, No. C-11-4385 EMC, 2012 WL 506330, at *5 (N.D. Cal. Feb. 15, 2012) ("Where a

12  plaintiff cannot state a claim under the borrowed law . . . he cannot state a UCL claim either.")

13  (citation and internal quotation marks omitted).

14         Whether the UCL can support a shareholder derivative claim is a more difficult question.

15  Plaintiff has identified no cases in which shareholders have been allowed to maintain a UCL claim

16  in a derivative action, and defendant has identified no case in which they have not.  Although one

17  federal court has held that "dismissal of UCL actions is appropriate when the plaintiff is neither a

18  competitor nor a consumer," *Dillon v. NBCUniversal Media LLC*, No. CV 12-09728 SJO AJWX,

19  2013 WL 3581938, at *7 (C.D. Cal. June 18, 2013), its holding relied on an overly broad reading

20  of a California decision holding that the UCL did not apply to contract claims involving neither

21  competitors nor unwary consumers, *see id.* (citing *Linear Tech. Corp. v. Applied Materials, Inc.*,

22  152 Cal. App. 4th 115, 135 (2007)).  Nonetheless, in the absence of any authority for permitting a

23  UCL claim to go forward in a shareholder derivative action, the California Supreme Court's

24  pronouncement that the "purpose [of the UCL] is to protect both consumers and competitors by

25  promoting fair competition in commercial markets for goods and services," *Kasky v. Nike, Inc.*, 27

26  Cal. 4th 939, 949 (2002), favors the conclusion that a UCL claim cannot be sustained in a

27  shareholder derivative action, because shareholders are neither consumers nor competitors.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

6. *Failure to State All Claims Against Director-Defendants by Failing to Allege Bad Faith*

According to defendants, the exculpatory provisions of Yahoo's corporate charter require plaintiff to show his or her bad faith in order to state any claim against a director. *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 495 (Del. Ch. 2000) ("Because Intercargo's certificate of incorporation contained an exculpatory provision immunizing its directors from liability for due care violations, the plaintiffs may survive this motion only if the complaint contains well-pleaded allegations that the defendant directors breached their duty of loyalty by engaging in intentional, bad faith, or self-interested conduct that is not immunized by the exculpatory charter provision."). According to defendants, plaintiff has made no such showing.[7]

Although Delaware law allows for the exculpation of breach of due care claims against directors, Del. Code 8, § 102(7)(b), it does not permit exculpation of claims (like the ones pled here) alleging breach of the duty of loyalty, knowing or intentional violations of the law, or receipt of an improper benefit, *id.* § 102(7)(b)(i)-(ii), (iv).  Accordingly, dismissal of claims based upon an exculpatory provision is appropriate only when a complaint exclusively pleads exculpated breach of due care claims.  *Alidina v. Internet.com Corp.*, No. CIV. A. 17235-NC, 2002 WL 31584292, at *8 (Del. Ch. Nov. 6, 2002) ("[W]hen a duty of care breach is not the exclusive claim, a court may not dismiss based upon an exculpatory provision.") (citations omitted) (emphasis in original).

7. *Failure to State Claims Against Officer-Defendants*

*by Pleading Only Biographical Information*

Defendants argue plaintiff's complaint pleads only biographical information about officer-defendants Kenneth A. Goldman (CFO since 2012), Ronald S. Bell (General Counsel and Secretary since 2012), and Henrique de Castro (COO from October 2012 until January 2014). According to defendants, plaintiff's "Amended Complaint . . . contains no allegations

---

[7] In their reply brief, defendants' attempt to re-assert a bad-faith pleading requirement against plaintiff by framing all its claims as *Caremark* claims.  This argument fails for the reasons previously noted.  *See supra* Part IV.B.2 n.6.

1  demonstrating how any of the Officer Defendants purportedly caused Yahoo to violate the ICA —

2  or even had a duty to prevent or cure any such alleged violation."  Individual Defs.' Mot. to

3  Dismiss 5.

4        As to officers Goldman and de Castro, defendants are correct.  According to plaintiff,

5  Goldman is "responsible for Yahoo's global finance functions including financial planning and

6  analysis, controllership, tax, treasury, and investor relations," and de Castro was "responsible for

7  strategic operational management of Yahoo's sales, media, business development and operations

8  worldwide."  Plaintiff does not allege facts showing Goldman or de Castro caused Yahoo to

9  violate the ICA or had a duty to register Yahoo under the ICA.  Thus plaintiff has alleged no facts

10  supporting liability for Goldman or de Castro on any of its claims.  Plaintiff's bare allegations that

11  all individual defendants breached their duties to Yahoo and "caused Yahoo to violate the ICA,"

12  *see, e.g.*, Am. Compl. ¶ 2, do not "contain sufficient factual matter, [if] accepted as true, to state a

13  claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and internal quotation

14  marks omitted).

15        As to Bell, however, defendants are incorrect.  Plaintiff's allegation that Bell, as general

16  counsel, "oversees the Company's worldwide legal compliance and legal operations" is sufficient

17  factual content to state a claim for relief when all of plaintiff's claims depend on the theory that

18  Yahoo was required to register under the ICA, and that defendants consciously disregarded that

19  obligation by keeping Yahoo unregistered.

20                                   **V. CONCLUSION**

21        For the foregoing reasons, plaintiff's claims are dismissed.  Although it is not immediately

22  obvious how plaintiff's case could be saved by amendment, plaintiff is given leave to amend if, in

23  good faith, it can advance a viable complaint. Any amended complaint shall be filed within 30

24  days of the issuance of this order.

25

26  **IT IS SO ORDERED**.

27

28

United States District Court
Northern District of California

1    Dated: October 19, 2016

2

3                                       RICHARD SEEBORG
                                        United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
CASE NO. 16-cv-00478-RS